STATE OF NORTH CAROLINA v. JANE COOPER RHYNE

No. 789SC734

(Filed 2 January 1979)

**1. Criminal Law § 42.4— connection of knife with crime**

In this prosecution for felonious assault, a knife was sufficiently associated with the crime charged for its admission in evidence where the victim testified that a knife was used in the assault and that the knife offered in evidence

could have been that knife; a codefendant's father testified he sold the knife to defendant on the date of the crimes and later found it under a kitchen cabinet; an examination of the knife by a forensic serologist revealed the presence of blood; and other testimony tended to show that holes in the clothes of the victim could have been caused by the knife.

**2. Conspiracy § 6— conspiracy to murder—sufficiency of evidence**

The State's evidence was sufficient for the jury on the issue of defendant's guilt of conspiracy to murder her mother and sister.

**3. Assault and Battery § 14.3— felonious assault—sufficiency of evidence**

The State's evidence was sufficient for the jury in a prosecution for assault with a deadly weapon with intent to kill inflicting serious injury where it tended to show that defendant assaulted her sister with a lamp and with porcelain figurines, that defendant intended to kill her sister, and that defendant's sister suffered multiple cuts of the face, two lacerations on the back of the scalp, two or three small lacerations of the right hand, and an injury to the base of the nose.

**4. Assault and Battery § 15.2; Indictment and Warrant § 17.5— deadly weapon used—variance between indictment and charge—absence of prejudice**

In a felonious assault prosecution in which the indictment alleged that a lamp was the deadly weapon used in the assault and the evidence showed that defendant assaulted the victim with a lamp and with porcelain figurines, defendant was not prejudiced by the court's charge which permitted the jury to find that a porcelain figurine was the deadly weapon used in the assault since the indictment itself was not defective and all the purposes of the indictment were served in this case.

APPEAL by defendant from *Thornburg, Judge.* Judgment entered 20 April 1978 in Superior Court, VANCE County. Heard in the Court of Appeals 28 November 1978.

The defendant, Jane Cooper Rhyne, was indicted for assault with a deadly weapon with intent to kill inflicting serious bodily injuries and for conspiracy to commit murder. Upon her pleas of not guilty to both charges, the jury returned verdicts of guilty as charged. From judgment sentencing her to imprisonment for a term of twenty years and a consecutive suspended term of imprisonment of ten years for the respective crimes, the defendant appealed.

The State's evidence tended to show that the defendant, Jane Cooper Rhyne, and Martha Inscoe went to the home of the defendant's mother at approximately 3:30 p.m. on 25 January 1978 to look for a key to a house the defendant and Inscoe occupied. While in the defendant's mother's home on that occasion, Inscoe

asked her if any of the telephones in the home would work when one of them was disconnected. The defendant and Inscoe departed the home shortly thereafter but returned at approximately 10:15 p.m. Upon returning to the home, they discovered the defendant's mother and sister there alone. The defendant walked to the fireplace and asked her sister to come to her. When the defendant's sister approached, she grabbed her by the arm and threw her to the floor. Inscoe then produced a knife and told the defendant's mother not to move. The defendant's mother made an unsuccessful attempt to gain control of the knife by taking it from Inscoe and was cut on the hand. The defendant then began beating her sister with a lamp and with porcelain figurines and stated that she was going to blind her sister and kill her. The defendant called to Inscoe to kill the defendant's mother and to then help the defendant kill the sister. Inscoe then stabbed the defendant's mother several times. At that time, the wind apparently slammed the back door of the home shut, and the defendant and Inscoe fled.

Both the defendant's mother and sister were admitted to the hospital. The defendant's mother was suffering from multiple stab wounds and was in a state of shock. The defendant's sister had multiple lacerations on her face, the back of her scalp and her right hand. Both victims remained in the hospital for a week.

The defendant presented evidence in the form of alibi testimony.

Additional facts pertinent to this appeal are hereinafter set forth.

*Attorney General Edmisten, by Associate Attorney Thomas H. Davis, Jr., for the State.*

*J. Henry Banks for defendant appellant.*

MITCHELL, Judge.

[1] The defendant first assigns as error the admission into evidence of a knife marked and identified as State's Exhibit 1. In support of this assignment, the defendant contends that the State's evidence failed to associate the knife with a crime charged. This assignment is without merit.

Generally, weapons may be admitted into evidence when testimony or other evidence tends to show that they were used in the commission of a crime. *State v. Miller*, 288 N.C. 582, 220 S.E. 2d 326 (1975); *State v. Simmons*, 286 N.C. 681, 213 S.E. 2d 280 (1975); *State v. Patterson*, 284 N.C. 190, 200 S.E. 2d 16 (1973). The defendant's mother testified that a knife was used in the commission of the crimes charged and that State's Exhibit 1 could have been that knife. Martha Inscoe's father testified that he sold the knife identified as State's Exhibit 1 to the defendant on the date of the crimes charged. He later found the knife under a kitchen cabinet and turned it over to law enforcement authorities. The knife was examined by a forensic serologist employed by the State Bureau of Investigation. This examination revealed the presence of blood on the knife. Testimony was also admitted tending to show that holes in the clothes of the defendant's mother could have been caused by the knife. Any lack of certainty by the defendant's mother in identifying the knife went to the weight and credibility to be given the State's evidence rather than to its admissibility. State's Exhibit 1 was relevant evidence amply identified. *State v. Cousins*, 289 N.C. 540, 223 S.E. 2d 338 (1976). The trial court correctly admitted the knife into evidence.

The defendant next assigns as error the denial of her motion for judgment as in the case of nonsuit made at the close of the State's evidence. After the denial of this motion, the defendant presented evidence in her own behalf. No additional motion was made by the defendant at the close of all of the evidence. When the defendant introduced evidence, she waived her prior motion for judgment as in the case of nonsuit. G.S. 15-173; *State v. Fikes*, 270 N.C. 780, 155 S.E. 2d 277 (1967); *State v. Howell*, 261 N.C. 657, 135 S.E. 2d 625 (1964). Therefore, the defendant has established no basis upon which to appeal the denial of her motion.

However, we note that, on appeal of these cases to this Court, the defendant could have asserted the insufficiency of all of the evidence without regard to whether a motion was made at trial. G.S. 15A-1227(d); G.S. 15A-1446(d)(5). Although the defendant did not properly assert her assignment of error with regard to the sufficiency of the evidence, we choose to review it ex mero motu.

[2] The crime of conspiracy need not be proven through direct evidence, and only rarely will direct evidence of a conspiracy be

available. *State v. Bindyke*, 288 N.C. 608, 220 S.E. 2d 521 (1975); *State v. Puryear*, 30 N.C. App. 719, 228 S.E. 2d 536, *appeal dismissed*, 291 N.C. 325, 230 S.E. 2d 678 (1976). Generally, a conspiracy is

> established by a number of indefinite acts, each of which, standing alone, might have little weight, but, taken collectively, they point unerringly to the existence of a conspiracy. . . . [T]he results accomplished, the divergence of those results from the course which would ordinarily be expected, the situation of the parties and their antecedent relations to each other, together with the surrounding circumstances, and the inferences legitimately deducible therefrom, furnish, in the absence of direct proof, and often in the teeth of positive testimony to the contrary, ample ground for concluding that a conspiracy exists.

*State v. Whiteside*, 204 N.C. 710, 712-13, 169 S.E. 711, 712 (1933) (citations omitted). When taken in the light most favorable to the State, we find the evidence introduced was sufficient to sustain the defendant's conviction for conspiracy.

[3] There was also sufficient evidence from which the jury could determine that the defendant assaulted her sister with a lamp and figurines which were used as deadly weapons and that, at the time of the assault, the defendant intended to kill her sister. Whether the defendant inflicted "serious injury" by such an assault is not susceptible to answer by the application of a broad general rule. Instead, this issue must be resolved by looking to the peculiar facts of the case on appeal. *State v. Jones*, 258 N.C. 89, 128 S.E. 2d 1 (1962). In the present case, a medical doctor testified that the defendant's sister suffered multiple cuts of the face, two lacerations on the back of the scalp, two or three small lacerations of the right hand and an injury to the base of the nose. We find this sufficient evidence from which the jury could determine that the defendant inflicted "serious injury" upon her sister. The State's evidence was sufficient to sustain both convictions of the defendant.

[4] The defendant contends that the trial court erred in its charge to the jury by allowing the jury to find that a figurine was the deadly weapon used by the defendant to assault her sister, and not a lamp as alleged in the bill of indictment. During its

State v. Rhyne

charge, the trial court stated that, prior to returning a verdict of guilty on the assault charge, the jury must find that the State had proven that the defendant used a deadly weapon. The trial court further stated to the jury that either a figurine or a lamp could be a deadly weapon and that the jury must find that the defendant assaulted the victim with figurines *and* a lamp before returning a verdict of guilty. It is possible, therefore, that the jury based its verdict of guilty upon finding that one of the figurines was a deadly weapon but the lamp was not and that the victim was assaulted with both the figurines and the lamp. If this conclusion was reached by the jury, and for purposes of this appeal we must assume arguendo that it was, the conviction was based upon the use of a deadly weapon other than that described in the bill of indictment.

There was no defect in the bill of indictment itself, as it contained all of the information required by G.S. 15A-924. Nor was there a fatal variance between the allegations of the bill and the proof offered at trial. Ample evidence was presented that the defendant committed the assault charged with a lamp used as a deadly weapon. Additionally, the trial court's charge, although varying from the precise allegations of the bill, was fully supported by the evidence. As previously pointed out, however, the trial court's charge on the evidence varied from the precise allegations of the bill of indictment.

In determining whether the variance of the trial court's charge from the precise allegations of the bill constituted prejudicial error requiring reversal, we must look to the purposes served by a bill of indictment. The first purpose of the bill is to identify the crime for which the defendant stands charged. A second purpose of the bill is to protect the defendant against being tried twice for the same offense. A third purpose of the bill is to provide a basis upon which the defendant may prepare his defense. Finally, the bill guides the trial court in the imposition of sentence upon a determination of the defendant's guilt. *State v. Arnold*, 285 N.C. 751, 208 S.E. 2d 646 (1974); *State v. Greer*, 238 N.C. 325, 77 S.E. 2d 917 (1953).

In the present case the bill of indictment has served each and every one of these purposes. The bill serves the first purpose by identifying the crime for which the defendant was charged as

assault with a deadly weapon with intent to kill inflicting serious bodily injuries not resulting in death. The bill serves the second purpose of a bill of indictment by protecting the defendant from being twice put in jeopardy for the same offense. The evidence clearly demonstrated that a single assault was committed, even though two or more weapons may have been used in that assault. The assault was committed at a single time and place and against a single victim. An additional conviction based on the same evidence would be prohibited by the defendant's assertion of her right to be free from being twice put in jeopardy for the same offense. *See Ashe v. Swenson*, 397 U.S. 436, 25 L.Ed. 2d 469, 90 S.Ct. 1189 (1970). As the bill of indictment provided an ample basis for the defendant's preparation of her defense, the third purpose of a bill of indictment was served. This is particularly true in light of the fact that she offered evidence tending to establish alibi. A more complete description of the weapon or weapons used would not have materially improved her ability to prepare her defense as both the lamp and figurines were similar blunt instruments employed at the same time and in an identical manner. Obviously, a more detailed description of the weapon or weapons used would not have related to the defendant's assertions of alibi. We do not believe that the portion of the trial court's charge describing the weapons as a lamp and figurines could have caused any surprise on the part of the defendant which would necessitate a different defense or would have affected the credibility of the defense she presented. The final purpose of a bill also was clearly served as the crime charged was sufficiently identified to enable the trial court to impose a sentence within the limits established by law.

As the bill of indictment was not defective and the purposes of a bill of indictment were served, we perceive no prejudicial error in the trial court's charge to the jury, even though there was a technical variance between the charge on the evidence and the precise wording of the bill. As any error in the charge was not prejudicial, a new trial will not be required, and the assignment of error is overruled. *Gregory v. Lynch*, 271 N.C. 198, 155 S.E. 2d 488 (1967); 1 Strong's N.C. Index 3d, Appeal and Error, §§ 46.1 and 47, pp. 302-305.

The defendant additionally assigns as error the trial court's statement of her contentions. The defendant contended that she

talked to one Dwain Tart at 9:40 p.m., but the trial court stated that she contended she talked with him until 9:40 p.m. The defendant failed to object to the statement of contentions before the jury retired and, thereby, waived her right to appeal any error in this regard. *State v. Hewett*, 295 N.C. 640, 247 S.E. 2d 886 (1978).

The defendant received a fair trial free from any prejudicial error, and we find

No error.

Judges CLARK and WEBB concur.