STATE OF NORTH CAROLINA v. BASIL EDWARD HARDEN, JR.

No. 79SC366

(Filed 4 September 1979)

1. Burglary and Unlawful Breakings § 5.7; Larceny § 7— breaking into business—larceny of agricultural chemicals—sufficiency of evidence

Evidence was sufficient for the jury in a prosecution for felonious breaking and entering and felonious larceny of agricultural chemicals where it tended to show that defendant had possession and control of his truck on the night of the crime; his truck, fully loaded and driven by a white man, was observed on the night of the crime on the premises of the business which was broken and entered; the morning after the theft, the chemicals were found on defendant's father's farm near the defendant's deer stand concealed in a pine thicket; tire tracks matching the tires on defendant's truck were found at the crime scene; defendant admitted that the tire tracks around the chemicals stashed in the pine thicket were his; paint chips and staples matching those of the containers of the stolen chemicals were found in the truck; and when defendant encountered law officers on the state road near the chemicals, at the time knowing of the break-in, he did not tell the officers of their location.

2. Larceny § 8.4— possession of recently stolen property—instruction supported by evidence

Evidence in a felonious larceny prosecution was sufficient to support the trial court's instruction on possession of recently stolen property where such evidence tended to show that the stolen property was found on land owned by defendant's father whom he assisted in farming; the property was near defendant's home and he had a deer stand nearby; one set of tracks from defendant's truck circled the stolen goods; and less than a day elapsed from the theft to the discovery of the goods.

3. Criminal Law § 101.2— jurors' view of writing on blackboard—defendant not prejudiced

Defendant was not prejudiced when six jurors saw writing on a blackboard in the courtroom which had been made by the prosecutor and which related to his closing argument, since the words were nothing more than references to matters already in evidence; the words were relatively meaningless; and defendant failed to show that he was adversely affected by any possible error of the court in denying his motion for mistrial.

4. Constitutional Law § 30— exhibits not provided defendant prior to trial—no prejudice

Defendant could not complain of the admission into evidence of exhibits which were not provided him by the State prior to trial since he did not make a written request for discovery in compliance with G.S. 15A-902, nor was there any unfair prejudice or surprise in the exhibits which served to illustrate or corroborate the testimony of witnesses.

---

---

**5. Criminal Law § 87— surprise witness—no prejudice**

There was no merit to defendant's contention that the trial court erred in permitting a surprise witness to testify, since the witness who came forward in the middle of the trial was apparently no more of a surprise to defendant than he was to the State; the prosecutor did not act in bad faith; defendant was given advance warning and a chance to interview the witness before he was called; and in any event defendant was not entitled to a list of State's witnesses.

**6. Criminal Law § 102.5— prosecutor's reference to black man—no prejudice**

The prosecutor's reference to a black man as one who "slaved for" defendant's father was not inflammatory and prejudicial to defendant's case.

APPEAL by defendant from *Allsbrook, Judge.* Judgment entered 29 September 1978 in Superior Court, BERTIE County. Heard in the Court of Appeals 23 August 1979.

Defendant was charged with felonious breaking and entering and felonious larceny. Upon his pleas of not guilty, the jury returned verdicts of guilty to both charges. From a consolidated judgment sentencing him to a term of ten years, defendant appealed.

The State presented evidence which tended to show that on 6 April 1977, the W. R. Grace Company (Grace) office and warehouse in Windsor, North Carolina was broken into and entered, and agricultural chemicals worth $7,109.10 were taken. Drink money which was kept in a desk drawer was also taken. The break-in and theft were discovered about 7:00 a.m. by Grace employee Kenneth Holt Simmons when he came to work. The screen door and the glass window were broken out.

In closing up the night before, Simmons used a payloader to smooth the dirt area in front of the warehouse entrance. On the morning in question, one set of large mud grip tire tracks was found in this area. Law enforcement officers were called by Simmons.

Around 7:15 a.m., Simmons noticed defendant driving slowly by in a blue truck. Simmons saw defendant again five minutes later coming from the opposite direction, still driving slowly and looking at the Grace building. Simmons then made an inventory of the missing chemicals based on an inventory taken the day before. He was able to determine the exact quantities taken and the serial numbers on the containers.

The investigating officers made casts of the mud grip tire tracks found on the Grace premises. The officers then went to defendant's home. He was not there. On the way back to the main road, they met the defendant and other members of his family. They stopped and talked. Defendant was driving a blue truck with large mud grip tires. Defendant made no mention of the chemicals. The officers drove three quarters of a mile down the dirt road from the point where they had met defendant and talked with him. They noticed tracks similar to the ones found at Grace going off the state road onto a field road. The officers followed them behind a pine thicket and found the chemicals taken from Grace. The land belonged to defendant's father.

Defendant consented to a search of his truck later that day. Casts were made of his tires. A SBI specialist from Raleigh testified that in his opinion the tires on defendant's truck made the tracks found at Grace. Certain paint chips and staples found in defendant's truck were also linked to the Grace break-in. An SBI forensic chemist qualified as an expert was of the opinion that the yellow-orange and blue paint found in defendant's truck bed matched the colors on the outside of the containers of the stolen chemicals. An SBI specialist in tool markings testified on his examination of certain staples found in defendant's truck bed. It was his opinion in comparison with staples from the chemical containers that they were made either by the same machine or put in place by the same staple gun.

Finally, Mr. Milton Bazemore, who came forward while the trial was in progress, testified that he had seen defendant's truck parked at Grace on the morning of the break-in between 2:30 a.m. and 3:00 a.m. Mr. Bazemore testified that he pulled off the road and waited for the truck to go by him. The heavily loaded truck went past, and he was able to see the driver. He was white and had straight hair.

Defendant's evidence tended to show that he was home in bed the night of the break-in. The truck to which he had the only key had been used by his father the day before to haul some boxes and chemicals which would explain the paint chips and staples. He admitted his tire tracks were around the chemicals in the field. His father had told him to go out there and check the land. He found the chemicals and went to tell his father. He met

the officers after he had found the chemicals. He knew of the break-in but did not tell the officers about the chemicals because of past run-ins he had with the law. Through cross-examination of State's witnesses, the defense attempted to implicate Charlie White, a black employee of defendant's father, as the culprit.

*Attorney General Edmisten, by Assistant Attorney General Patricia B. Hodulik, for the State.*

*Carter W. Jones and Donnie R. Taylor, for defendant appellant.*

VAUGHN, Judge.

[1] Defendant attempts to assign error in the denial of his motion to dismiss at the close of the State's evidence. Following the denial of the motion, he put on evidence in his own behalf. No motion was made at the conclusion of all the evidence. He, therefore, waived his prior motion and cannot now bring it forward as appealable error. G.S. 15-173; *State v. Fikes*, 270 N.C. 780, 155 S.E. 2d 277 (1967); *State v. Rhyne*, 39 N.C. App. 319, 250 S.E. 2d 102 (1979). Defendant has not asserted, as he could have without exception at trial, that all the evidence was insufficient as a matter of law. G.S. 15A-1446(d)(5); G.S. 15A-1227(d). We have, nevertheless, reviewed the evidence and conclude that it was sufficient to take both the felony breaking and entering and felony larceny to the jury. When considered in the light most favorable to the State, the evidence discloses that defendant had possession and control of his truck the night of the crime. His truck, fully loaded and driven by a white man, was observed on the Grace premises the night of the crime. The morning after the theft, the chemicals were found on the defendant's father's farm near defendant's deer stand. They were hidden in a pine thicket. Tire tracks matching the tires on defendant's truck were found on the Grace lot. Defendant admitted that the tire tracks around the chemicals stashed in the pine thicket were his. Paint chips and staples matching those of the containers of the stolen chemicals were found in the truck. When defendant encountered law officers on the state road near the chemicals and knowing of the break-in, he did not tell the officers of their location. This evidence was sufficient to withstand a motion to dismiss.

[2] Defendant assigns error to the instruction of the jury on the doctrine of possession of recently stolen goods. The doctrine merely permits an inference or presumption of fact after the State proves "beyond a reasonable doubt that (1) the property described in the indictment was stolen; (2) the property shown to have been possessed by the accused was the stolen property, and (3) the possession was recently after the larceny." *State v. Fair*, 291 N.C. 171, 174, 229 S.E. 2d 189, 190 (1976). Defendant argues the evidence of his possession of the stolen chemicals was not strong enough to warrant the charge. The judge must instruct on the evidence as it arises in the case being tried. It is for the jury to decide what weight and what inferences it will draw from that evidence.

While defendant did not own the land upon which the chemicals were found and others had access to the land, other evidence presented in the case required the instruction. Defendant's truck was used in the theft. The chemicals were found on land owned by defendant's father whom he assisted in farming. It was near defendant's home, and he had a deer stand nearby. One set of tracks from defendant's truck circled the stolen chemicals. Less than a day elapsed from the theft to the discovery. The exact quantities and brands were found. The jury could find beyond a reasonable doubt from this evidence that defendant was in possession of the stolen property.

> "The sense of the term of possession in this connection is not necessarily limited to custody about the person. It may be of things elsewhere deposited, but under the control of a party. It may be in a storeroom or barn, where the party has the key. In short, it may be in any place where it is manifest it must have been put by the act of the party or with his undoubted concurrence." *State v. Johnson*, 60 N.C. (Win.) 236, 237 (1864).

We hold the evidence was sufficient to support the charges on the doctrine of possession of recently stolen goods. That evidence was also sufficient to overcome defendant's motion for dismissal. *State v. Hales*, 32 N.C. App. 729, 233 S.E. 2d 601, *cert. den.*, 292 N.C. 732, 235 S.E. 2d 782 (1977); *State v. Lilly*, 25 N.C. App. 453, 213 S.E. 2d 418 (1975); *State v. Hinton*, 20 N.C. App. 210, 200 S.E. 2d 836 (1973).

[3] Prior to the close of all the evidence, the prosecutor wrote the following words on a blackboard: "tires, staples, dime, tracks, five to seven farms, seven hundred acres, one quarter of a mile, deep pine thicket, told no one, Milton, paint, mud and motive." These were notes related to the prosecutor's closing argument. They were apparently written the last morning of the trial. Defendant's redirect examination was carried over to this last morning and two other witnesses were called. The trial judge addressed the jury. He determined that six of the jurors had seen the writing on the blackboard. He then instructed the jury not to consider the writing in their deliberations in any way or to draw any inferences from it one way or the other. Defendant moved for a mistrial which the trial judge denied. The motion for mistrial was addressed to the sound discretion of the trial judge. *State v. Trivette*, 25 N.C. App. 266, 212 S.E. 2d 705 (1975). The record of this case indicates no abuse of discretion by the trial judge. The words were nothing more than references to matters already in evidence. We think the trial judge was correct in his decision that the words were "relatively meaningless." Defendant has not met his burden of showing that the possible error adversely affected him. *State v. Harris*, 23 N.C. App. 77, 208 S.E. 2d 266 (1974). We find no prejudice to defendant. *See State v. Pridgen*, 20 N.C. App. 116, 200 S.E. 2d 815 (1973).

[4] Defendant assigns error in the admission of certain exhibits. He alleges unfair surprise in the admission of two photographs of the area where the chemicals were found, a sketch of the staples found in defendant's truck and notes made by an investigating officer on the day in question. Apparently, there was some sort of informal pretrial discussion between the prosecutor and defendant's attorney at which some or all these exhibits were not mentioned or provided to the defense by the State. The assignment of error has no merit in either procedure or substance. Procedurally, defendant made no written request for discovery in compliance with G.S. 15A-902. The statutory scheme which overruled the unavailability at common law of discovery in criminal cases was not followed by defendant. He cannot use its provision now to assert error. Substantively, there was no unfair prejudice or surprise in these exhibits which served to illustrate or corroborate the testimony of witnesses.

**[5]**  As part of the same assignment of error, defendant alleges error in the calling of a surprise witness. This argument has even less merit than defendant's attack on the exhibits. The witness who came forward in the middle of the trial was apparently no more of a surprise to defendant than he was to the State. The prosecutor did not act in bad faith. Defendant was given advance warning and a chance to interview the witness before he was called. In any event, neither the common law nor the criminal discovery statute, G.S. 15A-903, entitles a defendant to a list of State's witnesses. *State v. Smith*, 291 N.C. 505, 231 S.E. 2d 663 (1977); *see also*, Official Commentary to G.S. 15A-903 and G.S. 15A-910.

**[6]**  On cross-examination of defendant's father, the prosecutor asked:

> "And you and your son through Mr. Jones for half of this trial have tried to tell the ladies and gentlemen of this jury that Charlie White back there who *slaved* for you and worked for you so long, could have taken these chemicals?" (Emphasis added.)

Defendant contends this question referring to a black man before a mixed jury was inflammatory and prejudicial to his case. We do not agree. An objection to the question was immediately sustained by the trial judge. The jury was instructed not to consider the question and the witness was instructed not to answer. There was no other instance of this sort in the whole trial. It is inconceivable that it affected the outcome of the case especially in light of the trial judge's prompt and proper handling of the matter. *State v. Martin*, 294 N.C. 253, 240 S.E. 2d 415 (1978); *State v. Self*, 280 N.C. 665, 187 S.E. 2d 93 (1972).

No error.

Judges HEDRICK and ARNOLD concur.