STATE v. LOTHARP

[148 N.C. App. 435 (2002)]

---

STATE OF NORTH CAROLINA v. DULAINE LOTHARP

No. COA00-1329

(Filed 5 February 2002)

**1. Assault; Criminal Law— aggravated assault—disjunctive instructions—erroneous**

The trial court erroneously gave disjunctive instructions in a prosecution for assault with a deadly weapon inflicting serious injury where the court told the jury to return a verdict of guilty if it found that defendant beat the victim with his hands and feet and/or a chain, and that defendant's hands and feet and/or the chain were deadly weapons. While there is a line of cases which allows disjunctive phrasing if there is a single wrong which can

be proven by alternative means, the controlling statute here requires that an assault must have been committed with a deadly weapon with a resulting serious injury from the use of that weapon.

**2. Sentencing— habitual felon—irrelevant additional felony pleas**

There was no prejudicial error in an habitual felon prosecution where the documents admitted to show prior felonies contained evidence of additional felony pleas which had not been listed in the indictment and which the State was not seeking to prove. The three additional convictions were not relevant and should have been redacted, but the court gave a limiting instruction and defendant did not show that a different outcome would have resulted without this evidence.

**3. Criminal Law— defense counsel's argument—intoxication of assault victim**

The trial court did not abuse its discretion in a prosecution for assault with a deadly weapon inflicting serious injury by not allowing defendant to argue the North Carolina impaired driving statute as a comprehensible standard by which the jury could determine the intoxication of the victim. While it is true that argument of any relevant point supported by the evidence is allowed, the court must not permit an improper application of a statute to the evidence, and defendant was allowed to make the point that the victim was intoxicated at the time of the attack.

Judge TIMMONS-GOODSON dissenting.

Appeal by defendant from judgments dated 26 May 2000 by Judge Michael E. Beale in Superior Court, Union County. Heard in the Court of Appeals 10 October 2001.

*Attorney General Roy Cooper, by Assistant Attorney General Robert M. Curran, for the State.*

*Marjorie S. Canaday for defendant-appellant.*

McGEE, Judge.

Dulaine Lotharp (defendant) was indicted for robbery with a dangerous weapon and assault with a deadly weapon inflicting serious injury while occupying the status of habitual felon. Evidence at trial

tended to show that Terry Barrett (Barrett) moved into a new apartment in Monroe, North Carolina on or about 22 February 1999 and met defendant shortly thereafter. Defendant, Barrett, and Chris Craig (Craig) drank alcohol and smoked crack cocaine off and on at Barrett's apartment from the evening of 24 February through the early evening of 25 February. During the afternoon of 25 February, Craig and defendant had a confrontation about defendant borrowing money from Craig and Barrett. Both Craig and defendant left Barrett's apartment between 5:30 p.m. and 6:00 p.m.

Barrett testified that he was awakened later that evening by a knock at his door. Barrett stated that someone outside the door identified himself as "Laine," the name by which Barrett knew defendant. When Barrett opened the door, defendant kicked him in the face, knocking him to the floor. Defendant repeatedly kicked and punched Barrett about the head saying, "This is for Chris." Barrett lost consciousness. Barrett testified he kept a metal five-pound chain wrapped in duct tape on his night stand and when he regained consciousness, the chain was on the floor near his feet. Barrett also testified that his wallet with about $300.00 in it was missing.

As a result of the attack, Barrett suffered a broken cheek bone, broken upper jaw bones on both sides of his face, and bruises on his lower back and shoulder. Dr. William McClelland testified he performed reconstructive surgery on Barrett's face, and that as a result of the attack, Barrett lost a significant amount of blood and also suffered temporary minor memory loss. Dr. McClelland further testified that the injuries to Barrett's face could have been caused by hands and feet, or by a blunt object. He testified that the bruises on Barrett's back were likely not caused by hands or feet but could have been caused by "the chain."

A jury convicted defendant of assault with a deadly weapon inflicting serious injury, robbery with a dangerous weapon and being an habitual felon. The trial court sentenced defendant to a minimum of 151 months and a maximum of 191 months for each of the two convictions, with the sentences to run consecutively. Defendant appeals.

I.

[1] In his first assignment of error, defendant argues that the trial court erred in giving a disjunctive instruction to the jury, raising the possibility that the jury's verdict was not unanimous on the issue of

assault with a deadly weapon inflicting serious injury. Under the North Carolina Constitution, "[n]o person shall be convicted of any crime but by the unanimous verdict of a jury in open court." N.C. Const., art. 1, § 24; *see also,* N.C. Gen. Stat. § 15A-1237(b) (1999). A person is guilty of felonious assault with a deadly weapon inflicting serious injury if he "assaults another person with a deadly weapon and inflicts serious injury." N.C. Gen. Stat. § 14-32(b) (1999). The trial court instructed the jury as follows:

> I charge that if you find from the evidence beyond a reasonable doubt that . . . the defendant intentionally beat the victim with his hands and feet, and/or with a chain and that the defendant's hands and feet and/or the chain were deadly weapons, thereby inflicting serious injury upon the victim, it would be your duty to return a verdict of guilty of assault with a deadly weapon inflicting serious injury. However, if you do not so find or have a reasonable doubt as to one or more of these things, you will not return a verdict of guilty of assault with a deadly weapon inflicting serious injury, but would consider whether the defendant is guilty of assault inflicting serious injury.

Two lines of cases have developed addressing the question of whether submission of an issue to the jury in the disjunctive is reversible error and are based upon *State v. Hartness,* 326 N.C. 561, 391 S.E.2d 177 (1990) and *State v. Diaz,* 317 N.C. 545, 346 S.E.2d 488 (1986).

Two early cases in the *Hartness* line follow the same general proposition that some statutes allow for a "single wrong" to be "established by a finding of various alternative elements" and thus a disjunctive instruction is not a basis for reversal. *Hartness,* 326 N.C. at 566, 391 S.E.2d at 180. In *Jones v. All American Life Ins. Co.,* 312 N.C. 725, 325 S.E.2d 237 (1985), a plaintiff-beneficiary attempted to recover life insurance proceeds. The common law "slayer" doctrine was raised as a defense to the plaintiff's recovery of the proceeds because the evidence tended to show that the plaintiff "killed or procured the killing" of the insured. *Id.* at 733, 325 S.E.2d at 241. The jury instruction in *Jones* asked, "Did . . . plaintiff[] willfully and unlawfully *kill* [the insured] *or procure his killing?*" *Id.* at 737, 325 S.E.2d at 243. The plaintiff argued that this disjunctive instruction was ambiguous and thus prevented the jury from reaching a unanimous verdict because "the disjunctive issue left open the possibility that less than all the jurors could agree on whether plaintiff herself killed [the insured], or had him killed by her sons or some other party." *Id.* Our

Supreme Court disagreed and held that the disjunctive instruction was not fatally ambiguous because the jury only needed to find that the plaintiff had participated in the death of the insured by either alternative method to bar the plaintiff's recovery of the proceeds. *Id.* at 738, 325 S.E.2d at 244.

The defendant in *State v. Creason*, 313 N.C. 122, 326 S.E.2d 24 (1985) was convicted of possession with intent to sell and deliver a controlled substance in violation of N.C. Gen. Stat. § 90-95(a)(1), stating that it is unlawful to "manufacture, sell or deliver, or possess with intent to manufacture, sell or deliver, a controlled substance." *Id.* at 129, 326 S.E.2d at 28. The defendant argued that the use of a disjunctive jury form in this case resulted in a non-unanimous verdict. Our Supreme Court held that unanimity was satisfied because "[i]t is the *intent* of the defendant that is the gravaman of the offense." *Id.* It was therefore immaterial whether the jury found the crime was committed by sale or delivery of a controlled substance, as long as all the jurors found that the defendant possessed the controlled substance and had the requisite intent, through either the sale *or* delivery of the controlled substance. *Id.* The requirement of unanimity was therefore satisfied. *Id.* at 131, 326 S.E.2d at 29.

At issue in *Hartness* was the defendant's conviction for taking indecent liberties with a minor in violation of N.C. Gen. Stat. § 14-202.1, which states that a person is guilty of the crime if he "[w]illfully takes or attempts to take any immoral, improper, or indecent liberties with any child . . . for the purpose of arousing or gratifying sexual desire." *Hartness*, 326 N.C. at 567, 392 S.E.2d at 180. The trial court instructed the jury according to the pattern jury instructions which read in part, "[t]hat the defendant wilfully took an indecent liberty with a child for the purpose of arousing or gratifying sexual desire." *Id.* at 563, 392 S.E.2d at 178. The defendant contended that this instruction improperly permitted the jury to convict him by a less than unanimous verdict because "the jury could have split in its decision regarding which act constituted the offense, making it impossible for the court to determine whether the jury was unanimous in its verdict." *Id.* Our Supreme Court disagreed and found that the General Assembly intended that the single offense of taking indecent liberties with a minor could be satisfied by "any one of a number of acts." *Id.* at 567, 391 S.E.2d at 180. The Court reasoned that because the gravaman of the offense is the defendant's *purpose* for committing the act, the particular act performed is tangential. *Id.*

Our Supreme Court found *Hartness* controlling in the 1996 case of *State v. Oliver*, 343 N.C. 202, 215, 470 S.E.2d 16, 24 (1996). The defendant was charged and convicted of driving while impaired in violation of N.C. Gen. Stat. § 20-138.1. The trial court charged the jury in part:

> So . . . I charge you that if you find from the evidence beyond a reasonable doubt that . . . defendant . . . drove a vehicle on a highway within the [S]tate and that when he did so he was under the influence of an impairing substance *or* had consumed sufficient alcohol that at any relevant time after the driving the defendant had an alcohol concentration of [0.08] or more it would be your duty to return a verdict of guilty of impaired driving.

*Id.* at 214, 470 S.E.2d at 23-24. On appeal, the defendant argued that the disjunctive instruction given to the jury allowed for a non-unanimous verdict in violation of our state constitution and statutes. Our Supreme Court stated that the plain language of the statute proscribes a single wrong which can be proven by alternative means. The Court thus found that the disjunctive phrasing of the jury instructions was not fatal because regardless of whether some jurors found the defendant under the influence of an impairing substance, and others found the defendant's alcohol concentration at the prescribed statutory level, a unanimous jury found the defendant guilty of the single offense of driving while impaired.

In contrast to the *Hartness* line of cases, decisions under *Diaz* have stated that a disjunctive jury instruction is "ambiguous and fatally defective" where the instructions allow the jury to convict the defendant of "two or more possible crimes in a single issue." *State v. Lyons*, 330 N.C. 298, 303, 412 S.E.2d, 308, 312 (1991); *see also, Diaz*, 317 N.C. at 553, 346 S.E.2d at 494.

In *State v. Albarty*, 238 N.C. 130, 132, 76 S.E.2d 381, 382-83 (1953), a warrant was issued for the defendant for violation of N.C. Gen. Stat. § 14-291.1 which "makes it a misdemeanor for any person to 'sell, barter or cause to be sold or bartered, any ticket, . . . for any number or shares in any lottery . . . to be drawn or paid within or without the State.' " *Id.* at 133, 76 S.E.2d at 383. A jury found the defendant guilty as charged in the warrant. Our Supreme Court stated that in the context of N.C. Gen. Stat. § 14-291.1, "sell" and "barter" are not synonyms. *Id.* at 132, 76 S.E.2d at 383. Accordingly, a defendant can violate the statute "in four distinct ways. He may sell the illegal articles, or he may barter them, or he may cause another to sell them,

or he may cause another to barter them." *Id.* Because the warrant was issued in the disjunctive, the verdict was "invalid for uncertainty" as to which crime the defendant was charged with. *Id.* at 132-33, 76 S.E.2d at 383.

In *State v. McLamb*, 313 N.C. 572, 577-78, 330 S.E.2d 476, 480 (1985), our Supreme Court found a single set of jury instructions to be fatally ambiguous in part. In *McLamb*, the defendant was charged with both "the sale *or* delivery of cocaine, and the possession of cocaine with intent to 'sell or deliver.' " *Id.* at 577, 330 S.E.2d at 479. Because the sale and delivery of controlled substances are distinct offenses, the Supreme Court held that the charge of "sale or delivery of cocaine" was fatally defective and ambiguous. *Id.* at 577, 330 S.E.2d at 480. However, under *Creason*, the verdict of "possession with intent to 'sell or deliver' " cocaine was found not to be fatally ambiguous. *Id.* at 577-78, 330 S.E.2d at 480.

In *Diaz*, the defendant was charged in an indictment with trafficking in marijuana in an amount in excess of 10,000 pounds. *Diaz*, 317 N.C. at 546, 346 S.E.2d at 490. The trial court charged the jury that "if you find from the evidence and beyond a reasonable doubt that . . . the defendant . . . knowingly possessed or knowingly transported marijuana . . . it would be your duty to return a verdict of guilty as charged." *Id.* at 553, 346 S.E.2d at 493-94. Our Supreme Court stated that under N.C. Gen. Stat. § 90-95(h)(1), "[s]ale, manufacture, delivery, transportation, and possession of 50 pounds or more of marijuana are separate trafficking offenses for which a defendant may be separately convicted and punished." *Id.* at 554, 346 S.E.2d at 494. The Court held that because the disjunctive instructions made it impossible to tell what charge, if any, the jury unanimously found the defendant guilty of, the instructions were fatally defective because they were ambiguous. *Id.* Consistent with *Hartness*, however, the Court also noted that, "[t]he disjunctive will [not] always be fatally ambiguous. An examination of the verdict, the charge, the initial instructions by the trial judge to the jury . . . and the evidence in a case may remove any ambiguity created by the charge." *Id.* However, the defendant in *Diaz* was deprived of his constitutional and statutory right to a unanimous jury verdict.

Our Supreme Court distinguished the *Hartness* and *Diaz* decisions:

> There is a critical difference between the lines of cases represented by *Diaz* and *Hartness*. The former line establishes that

a disjunctive instruction, which allows the jury to find a defendant guilty if he commits either of two underlying acts, *either of which is in itself a separate offense*, is fatally ambiguous because it is impossible to determine whether the jury unanimously found that the defendant committed one particular offense. The latter line establishes that if the trial court merely instructs the jury disjunctively as to various alternative acts *which will establish an element of the offense*, the requirement of unanimity is satisfied.

*Lyons*, 330 N.C. at 302-03, 412 S.E.2d at 312.

Defendant argues that the *Diaz* line of cases controls here in that the disjunctive jury instruction was ambiguous and fatally defective because it raised the possibility of a non-unanimous jury verdict. Defendant argues that some jurors could have found that Barrett suffered a serious facial injury, but that it was inflicted with the non-deadly use of hands and feet; or that the chain was a deadly weapon, that it inflicted the back injury, but that the back injury was not a serious injury. Defendant also argues that since the jury was not required to specify what deadly weapon or what serious injury was involved, if any, it is impossible to determine from the verdict what the jury decided.

In contrast, the State contends that the *Hartness* line of cases controls and the disjunctive instruction was not fatally defective. Because all of Barrett's injuries occurred during one assault, the State argues that the jury need only have found that a deadly weapon was used and that a serious injury occurred.

A careful review of the underlying statute, N.C. Gen. Stat. § 14-32(b) (1999), aids us in determining which line of cases controls in this case. First, where "the language of a statute is clear, the court must implement the statute according to the plain meaning of its terms so long as it is reasonable to do so." *Lenox, Inc. v. Tolson*, 353 N.C. 659, 664, 548 S.E.2d 513, 517 (2001). The language in N.C.G.S. § 14-32(b) that "[a]ny person who assaults another person with a deadly weapon" plainly states that the gravaman of the offense is the assault of another with a deadly weapon. The plain meaning of "inflicts serious injury" is that if a person commits an assault with a deadly weapon and serious injury results *from that* assault, the person is guilty of felonious assault under N.C.G.S. § 14-32(b).

Second, if a person merely assaults another with a deadly weapon, then the person is guilty of a Class A1 misdemeanor assault

under N.C. Gen. Stat. § 14-33(c) (1999) if the person "commits any assault" and "in the course of the assault . . . he or she . . . [i]nflicts serious injury upon another person *or* uses a deadly weapon." (emphasis added). Under the State's interpretation of N.C.G.S. § 14-32(b), we could not determine when a defendant has met all the elements of felonious assault with a deadly weapon inflicting serious injury or when he has merely satisfied either element required for misdemeanor assault.

The State argues that under *State v. Rhyne*, 39 N.C. App. 319, 250 S.E.2d 102 (1979), "[w]here multiple weapons are used during an altercation to produce multiple injuries, a defendant is rightfully charged with only a single assault when the assault occurred at a single time and against a single victim." *Rhyne* is distinguishable from this case, however, because in *Ryhne* our Court allowed the use of multiple weapons to be incorporated into one charge to prevent the defendant from being subject to double jeopardy and to protect the defendant from being charged with a separate count of assault for each blow struck. *Id.* at 324-25, 250 S.E.2d at 106. Neither double jeopardy nor multiple counts of assault are at issue in the case before us.

Third, the disjunctive jury instruction in this case did not require the jury to determine whether the weapon inflicting serious injury was a deadly weapon as N.C.G.S. § 14-32(b) requires. Under our case law, an object can be found to be a "deadly weapon" if it is an instrument which is likely to produce death or great bodily harm "according to the manner of its use or the part of the body at which the blow is aimed." *State v. Joyner*, 295 N.C. 55, 64-65, 243 S.E.2d 367, 373 (1978). When a weapon may or may not be likely to produce fatal results due to its use, a jury's role as finder of fact is to determine whether the object was used as a deadly weapon. *Id.* Because the jury instructions at issue did not require the jury to specify whether it found the chain or defendant's hands and feet, or all three, to be deadly weapons, the instructions are ambiguous.

We are persuaded that the *Diaz* line of cases controls the case before us and that under N.C.G.S. § 14-32(b) an assault must have been committed with a deadly weapon and serious injury resulted from the use of that deadly weapon. The disjunctive jury instructions in this case made it impossible to tell whether the jury unanimously found that defendant used a specific deadly weapon to cause a specific serious injury. Thus, the disjunctive jury instructions

are ambiguous and fatally defective, requiring that defendant receive a new trial, which is hereby granted.

## II.

[2] Because the error argued in defendant's second assignment of error may occur at retrial of defendant's case, we address defendant's contention that the trial court erred in admitting evidence that was unfairly prejudicial to defendant in the habitual felon proceeding. In North Carolina an habitual felon is defined as "[a]ny person who has been convicted of or pled guilty to three felony offenses in any federal or state court in the United States or combination thereof." N.C. Gen. Stat. § 14-7.1 (1999). The second and third felonies must have been committed after the conviction or guilty plea of the felony preceding it. *Id.*

During the habitual felon proceeding in this case, the State introduced into evidence the records of defendant's prior convictions, as evidence of the three convictions upon which the State relied for the habitual felon indictment. Defendant argues admission of these documents was in error because each of these exhibits contained not only the felonies the State relied on to support the habitual felon indictment, but also three additional felony pleas which the State was not seeking to prove and which were not listed in the habitual felon indictment. Defendant argues these additional felonies were not relevant and their admission was unfairly prejudicial.

Relevant evidence is admissible; relevant evidence is defined as evidence "having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." N.C. Gen. Stat. § 8C-1, Rule 401 and Rule 402 (1999). Relevant evidence, however, "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice." N.C. Gen. Stat. § 8C-1, Rule 403. "[E]ven though a trial court's rulings on relevancy technically are not discretionary and therefore are not reviewed under the abuse of discretion standard applicable to Rule 403, such rulings are given great deference on appeal." *State v. Wallace*, 104 N.C. App. 498, 502, 410 S.E.2d 226, 228 (1991), *disc. review denied*, 331 N.C. 290, 416 S.E.2d 398, *cert. denied*, 506 U.S. 915, 121 L. Ed. 2d 241 (1992).

In the present case, evidence of defendant's three felony convictions which were in addition to the convictions the State was attempting to prove, is not relevant evidence and is inadmissible.

Thus, the trial court should have redacted the irrelevant felonies to ensure that the jury would not improperly consider them. The trial court, however, did issue a limiting instruction for all three convictions directing the jury to consider only the convictions relating to the habitual felon proceeding. Defendant has failed to show that the admission of the irrelevant felonies unfairly prejudiced the outcome such that a different result would have been reached by the jury had the evidence not been admitted.

Defendant's second assignment of error is dismissed.

### III.

In his third assignment of error, defendant contends that the trial court erred in denying his *Batson* motion because the prosecution impermissibly used a peremptory challenge to excuse a potential juror solely on the basis of her race, thereby violating defendant's rights under the Fourteenth Amendment of the United States Constitution and Art. I, Sec. 26 of the North Carolina Constitution. Since a different jury will be empaneled for defendant's new trial, we need not address this issue.

### IV.

[3] By his fourth assignment of error, defendant contends that the trial court erred in denying his motion that he be allowed to argue the North Carolina impaired driving statute as a comprehensible standard by which the jury could determine how intoxicated Barrett was at the time of the assault. We will address defendant's fourth assignment of error because this alleged error could occur at retrial of defendant's case.

At trial, defendant argued that Barrett lacked credibility because he was intoxicated at the time the attack occurred. Although Dr. McClelland testified that Barrett had 298 milligrams of alcohol per deciliter of blood, he was unable to convert that number into a standard commonly recognized by lay persons. To make the level of intoxication more clear to the jurors, defendant sought to address the North Carolina standard for intoxication while driving a motor vehicle in his closing statement. *See* N.C. Gen. Stat. §§ 20-4.01 and 20-138.1 (1999). The State objected and the trial court subsequently denied defendant's motion, stating that the driving while impaired statute was irrelevant because Barrett was not operating a vehicle at the time he was attacked.

Our Supreme Court has stated that

> [w]hile it is clear that 'the whole case as well of law as of fact may be argued to the jury' [citation omitted], and that 'counsel is given wide latitude to argue the facts and all reasonable inferences which may be drawn therefrom,' [citation omitted] nevertheless the conduct of arguments of counsel to the jury must necessarily be left largely to the sound discretion of the trial judge.

*State v. Whiteside*, 325 N.C. 389, 398-99, 383 S.E.2d 911, 916 (1989) (citing *State v. Britt*, 291 N.C. 528, 537, 231 S.E.2d 644, 651 (1977)). Absent a gross abuse of discretion, a trial court's determination on the scope of jury arguments should not be disturbed. *State v. Woods*, 56 N.C. App. 193, 196, 287 S.E.2d 431, 433, *cert. denied*, 305 N.C. 592, 292 S.E.2d 13 (1982).

Defendant argues that N.C. Gen. Stat. § 15A-1230(a) permits an attorney, during closing argument, "on the basis of his analysis of the evidence to argue any position or conclusion with respect to a matter in issue." While it is true that this statute allows an argument of any relevant point that is supported by the evidence, the trial court must not permit an improper application of a statute to the evidence.

Moreover, although defendant was not allowed to argue to the jury the intoxication standard from the impaired driving statute, he was permitted to convey the point that Barrett was intoxicated at the time of the attack. Dr. McClelland testified that Barrett reported drinking six beers the night he was attacked, and in his closing argument defendant's attorney stated that Barrett's blood alcohol concentration was, "[p]ut simply, .29" and repeated this statement several times. Also, defendant fails to show why a standard developed to show impaired driving of a vehicle is relevant as to what constitutes intoxication in other situations.

The trial court did not abuse its discretion in denying defendant's request to argue to the jury the standard for intoxication while driving a vehicle. Defendant's fourth assignment of error is dismissed.

New trial.

Judge BIGGS concurs.

Judge TIMMONS-GOODSON dissents with separate opinion.

TIMMONS-GOODSON, Judge, dissenting.

Because I disagree with the majority that the jury instructions given in the present case were fatally ambiguous, I respectfully dissent. I detect no reversible error by the trial court.

The majority states that, "[b]ecause the jury instructions at issue do not require the jury to specify whether they found the chain or defendant's hands and feet, or all three, to be deadly weapons, the instructions are ambiguous." I disagree. The trial court instructed the jury in pertinent part as follows:

> I charge that if you find from the evidence beyond a reasonable doubt that . . . the defendant intentionally beat the victim with his hands and feet, and/or with a chain **and** that the defendant's hands and feet and/or the chain were deadly weapons, thereby inflicting serious injury upon the victim, it would be your duty to return a verdict of guilty of assault with a deadly weapon inflicting serious injury.

(emphasis added). The above-stated instruction requires the jury to find that (1) the defendant intentionally beat the victim with his hands and feet and/or a chain *and* (2) that the defendant's hands and feet and/or the chain was a deadly weapon that inflicted serious injury. The disjunctive used in the instructions did not create fatal ambiguity; rather, it allowed the jury to choose between two alternative instrumentalities as the deadly weapon inflicting serious injury. Thus, the jury could find that defendant inflicted serious injury upon the victim by assaulting him with either his hands and feet *or* the chain. The instructions clearly required the jury to find that defendant assaulted the victim using a deadly weapon, thereby inflicting serious injury. Accordingly, there was no ambiguity as to whether or not the jury unanimously found each necessary element for the crime of assault with a deadly weapon inflicting serious injury under N.C. Gen. Stat. § 14-32(b). Because the instructions in the instant case allowed the jury to convict defendant of a single wrong by alternative means as approved of in the *Hartness* line of cases, I conclude that the instructions were not fatally ambiguous, and I would therefore hold that the trial court committed no error.