STATE OF NORTH CAROLINA v. BIENVENIDO DIAZ

No. 30PA86

(Filed 12 August 1986)

1. Narcotics § 4— trafficking in marijuana—evidence sufficient

The evidence of trafficking in marijuana was sufficient to support a reasonable inference that defendant was a participant in the planning of the crime of trafficking in more than 10,000 pounds of marijuana, that defendant was present and assisted in the loading, unloading and transportation of the marijuana, and that defendant was one of the men who fled to the swamp when agents arrived at the site at which a trawler was being unloaded. It was not necessary for the jury to stack inference upon inference to find that defendant was guilty and it is not necessary to invoke the doctrine of constructive possession when the State has established that a defendant was present while a trafficking offense occurred and that he acted in concert with others to commit the offense pursuant to a common plan or scheme.

2. Narcotics § 5— trafficking in marijuana—disjunctive instruction—ambiguous verdict

The trial court erred in a prosecution for trafficking in marijuana by denying defendant's motion to set aside the verdict where the court instructed the jury that it could find defendant guilty if it found that defendant knowingly possessed or knowingly transported 10,000 pounds or more of marijuana and the jury's verdict of guilty was fatally defective as ambiguous because there was no way to determine whether the jurors unanimously found that defendant possessed 10,000 pounds or more of marijuana, transported 10,000 pounds of marijuana, both possessed and transported 10,000 pounds or more of marijuana, or whether some jurors found that defendant possessed the marijuana and some found that he transported it. There was nothing in the verdict, the initial instructions of the trial judge, the charge, or the evidence which resolved the ambiguity. N.C.G.S. § 15A-1237, Art. 1, § 24 of the North Carolina Constitution.

Justice FRYE dissenting in part and concurring in part.

ON the State of North Carolina's petition for writ of certiorari to review the decision of the Court of Appeals reported at 78 N.C. App. 488, 337 S.E. 2d 147 (1985) (*Judge Parker* with *Judges Arnold* and *Wells* concurring), which vacated judgment entered by *Judge Frank Brown* at the 21 January 1985 criminal session of HYDE County Superior Court.

The defendant was charged in an indictment, proper in form, with trafficking in marijuana in an amount in excess of 10,000 pounds in violation of N.C.G.S. § 90-95(h)(1)(d). The trial judge charged that the defendant could be found guilty on the theory of concerted action and submitted as possible verdicts a verdict of guilty as charged or not guilty. The State's evidence will be fully set out in the body of the opinion.

Defendant offered no evidence.

The jury returned a verdict of guilty as charged.

*Lacy H. Thornburg, Attorney General, by Joan H. Byers, Special Deputy Attorney General, for the State.*

*Malcolm Ray Hunter, Jr., Appellate Defender, by Geoffrey C. Mangum, Assistant Appellate Defender, for defendant-appellee.*

BRANCH, Chief Justice.

The State assigns as error the decision of the Court of Appeals that the State failed to produce substantial evidence that the crime charged had been committed and that the offense was committed by defendant.

[U]pon a motion to dismiss in a criminal action, all the evidence admitted, whether competent or incompetent, must be considered by the trial judge in the light most favorable to the State, giving the State the benefit of every reasonable inference that might be drawn therefrom. Any contradictions or discrepancies in the evidence are for resolution by the jury. . . . The trial judge must decide whether there is substantial evidence of each element of the offense charged. Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*State v. Brown*, 310 N.C. 563, 566, 313 S.E. 2d 585, 587 (1984) (citations omitted). "It is immaterial whether the substantial evidence is circumstantial or direct, or both." *State v. Jones*, 303 N.C. 500, 504, 279 S.E. 2d 835, 838 (1981) (quoting *State v. Stephens*, 244 N.C. 380, 93 S.E. 2d 431 (1956) ). Circumstantial evidence need not exclude every reasonable hypothesis of innocence. *Id.*

Under N.C.G.S. § 90-95(h)(1) anyone who sells, manufactures, delivers, transports, or possesses more than 50 pounds of marijuana is guilty of the felony of trafficking in marijuana. If the quantity of marijuana involved equals or exceeds 10,000 pounds, the offense carries a minimum sentence of 35 years' imprisonment and a minimum fine of $200,000.

A defendant acts in concert with another to commit a crime when he acts "in harmony or in conjunction . . . with another pursuant to a common criminal plan or purpose." *State v. Joyner*, 297 N.C. 349, 356, 255 S.E. 2d 390, 395 (1979). Evidence that a defendant did some act forming a part of the crime charged, when considered together with evidence that others also did acts leading to the crime's commission, strongly indicates that the defendant was acting in concert with others to commit the crime charged. *Id.* at 356-57, 255 S.E. 2d at 395. However, it is not

> necessary for a defendant to do any particular act constituting at least part of a crime in order to be convicted of that crime under the concerted action principle so long as he is present at the scene of the crime and the evidence is sufficient to show he is acting together with another who does the acts necessary to constitute the crime pursuant to a common plan or purpose to commit the crime.

*Id.* at 357, 255 S.E. 2d at 395.

An examination of the record reveals overwhelming evidence that the crime of trafficking in marijuana occurred. Over 40,000 pounds of marijuana, along with a number of the traffickers, were seized by the State Bureau of Investigation and the Hyde County Sheriff's Department on 2 May 1984. The sole question remaining under this assignment of error is whether the State produced sufficient evidence that defendant committed the trafficking offense to take the case to the jury.

In reversing the trial court and deciding that the State did not produce sufficient evidence to take the case to the jury, the Court of Appeals reasoned that in order for the jury to conclude that defendant had engaged in trafficking in marijuana in excess of 10,000 pounds it would have to build inference upon inference. The Court of Appeals relied primarily on *State v. LeDuc*, 306 N.C. 62, 291 S.E. 2d 607 (1982).

It is necessary at this point to review the evidence offered by the State before we discuss the applicability of *LeDuc* to the instant case or determine the question presented by this assignment of error.

The State's evidence tended to show the following:

On 1 and 2 May 1984 agents of the State Bureau of Investigation were engaged in the surveillance of individuals believed to be involved in smuggling drugs. At approximately 6:05 p.m. on 1 May 1984, Carlos Sosa and Roberto Tellez were observed leaving the Holiday Inn in Williamston, North Carolina. Sosa was driving a tractor trailer truck; Tellez, a Ryder rental truck. They were followed by the agents until they turned off Highway 264 onto Fifth Avenue, a 2.3-mile dirt road which goes to the Long Shoal River. The agents walked to a point just south of the intersection of Fifth Avenue and Highway 264 and hid in a ditch. They heard voices coming from a pumping station located at the intersection and the sound of outboard motors coming from the Long Shoal River.

Around 1:00 a.m. on 2 May 1984, the agents saw a Buick Regal and a tractor trailer truck emerge from Fifth Avenue and turn towards Englehard onto Highway 264. The agents alerted other officers in the area who stopped the vehicles. The truck, driven by Sosa and carrying a passenger, Elias Silvino Rivero, was hauling 517 bales of marijuana and was equipped with a CB radio. The Buick was occupied by four Hispanic individuals: Louis Concepcion, Juan Hernandez, Reineril Fonseca, and Orlando Tudela. A search of the Buick revealed a rental agreement for the car in the name of Bienvenido Diaz. The agreement lists a home address, VISA card number, Florida driver's license number, and home telephone number for Bienvenido Diaz. CB radios wired into the electrical system, a map of the tidewater area, an airplane

ticket for an A. Jiminez, and papers for Louis Concepcion and Juan Hernandez were also found in the car.

After the tractor trailer truck and Buick Regal had left the area the agents went about 0.7 miles down Fifth Avenue where they discovered Roberto Tellez in a rental truck and arrested him. The truck was loaded with bales of marijuana and was also equipped with a CB radio.

At this point the agents and local law enforcement officers turned on the blue lights in their vehicles and went to the end of Fifth Avenue. There they saw several vehicles and numerous individuals running for the swamp. Four Hispanic individuals were arrested almost immediately, and Carlos Mesa was later arrested after he was found hiding in a Ryder truck. One of the vehicles found near the river was a Plymouth Reliant which had been rented by Reineril Fonseca, who was one of the occupants of the Buick Regal.

A trawler recently painted black was offshore at the end of Fifth Avenue at the time of the raid. It had scratches on its right side, apparently as a result of being unloaded. Flatbottomed boats containing marijuana residue were found in the back of two Ryder trucks parked at the site. A search of the trawler revealed numerous radios, marijuana residue, and a notebook and papers containing a code. The code contained the phrase "Dias equals Galones." On 10 May 1984 another copy of the code containing the same phrase was found in a house in Duck which the traffickers had rented.

Fingerprints from a number of traffickers were found on notes from the trawler or on notes at the house rented by the traffickers in Duck. Fingerprints of both Frank Concepcion and Eladio Valdes were found.

During the early morning hours of 2 May 1984 the officers apprehended a number of individuals from the surrounding water and swamp in addition to those already arrested. Most of those arrested were Hispanic. The next day four more suspects were arrested at Wahoo Seafood Company in Stumpy Point. On that same day Sheriff Dale arrested Eladio Valdes on Highway 264, five miles from Englehard. On 4 May 1984, Frank Concepcion was arrested after being found in a boat near the drug landing site.

On 5 May 1984, defendant was spotted walking along Highway 264 towards a bombing range by Sheriff Dale who noted that he was dirty and wet and appeared to be exhausted. Sheriff Dale also noted that defendant looked Hispanic. The Sheriff stopped defendant and asked him his name. Defendant replied that he was Benny Diaz. When Sheriff Dale asked defendant where he had been, Diaz stated that he had been out in the swamp for several days and nights. The Sheriff then arrested him.

The area in which Sheriff Dale spotted defendant is approximately ten miles from Stumpy Point and fifteen miles from Englehard. That area is uninhabited, contains a bombing range, and consists of woods and swamp. Sheriff Dale testified that it was unusual for anyone to be walking through that area, especially in early May.

[1] The evidence concerning the code phrase containing the word "Dias" and the rental agreement purportedly renting the seized Buick automobile to defendant, which automobile was seized while engaged in the trafficking of marijuana, was sufficient to support a reasonable inference that defendant was a participant in the planning of the crime of trafficking in more than 10,000 pounds of marijuana.

We are also of the opinion that there was ample evidence to support an inference from which the jury could reasonably find that defendant was one of the men who fled to the swamp and that prior to his flight he was present and assisting in the loading, unloading, and transportation of the marijuana. The evidence tending to support this inference is as follows: (1) That defendant, a Hispanic resident of Florida, was arrested three days after the raid at the loading area as he walked in the uninhabited marshes of Hyde County near a bombing range; (2) that at the time of his arrest defendant stated that he had been in the swamp for several days; (3) that three days before defendant's arrest, officers had arrested several Hispanic persons who were leaving the area where the marijuana was being unloaded from the trawler and loaded on a truck; four of these men were in a Buick automobile which was following a truck heavily loaded with marijuana; (4) that after these arrests were made, the officers proceeded to the loading area where more Hispanic persons were ar-

rested, and numerous individuals were observed fleeing to the swamp.

Further, we are of the opinion that defendant's reliance on *State v. LeDuc*, 306 N.C. 62, 291 S.E. 2d 607, and *State v. Baize*, 71 N.C. App. 521, 323 S.E. 2d 36 (1984), *disc. rev. denied*, 313 N.C. 174, 326 S.E. 2d 33 (1985), is misplaced.

In *LeDuc* the defendant was convicted of conspiring to possess 22.4 pounds of marijuana. The State produced evidence that the marijuana was found in a trawler docked at an isolated point in Dare County and that LeDuc's fingerprints were found in several different places in the trawler. There was also evidence that shortly after the trawler docked cargo was unloaded from it and put into a truck. After the truck left, three unidentified persons were seen coming from the direction of the trawler and left in a second truck after staying in an unlocked building for approximately five minutes. There was no direct evidence that LeDuc had chartered the trawler. LeDuc's signature on the charter was similar to known examples of his signature. However, the owners of the trawler could not identify LeDuc as being the man who chartered the trawler under the name of "LeDuc" and one owner testified that LeDuc was not the man who had chartered the trawler.

Though there was no direct evidence that LeDuc chartered the trawler, participated in its navigation, or was aboard while marijuana was being transported, we held that the jury could reasonably infer from the evidence that these things were true. *LeDuc*, 306 N.C. at 77, 291 S.E. 2d at 616-17.

> It could infer, from similarity in the signatures and names and the Florida driver's license shown to the owners of the trawler, that defendant was the same Milan LeDuc who arranged for and executed the charter. It could infer from defendant's fingerprints found on board the vessel, the places where these prints were found, and defendant's Coast Guard license application that defendant had participated in navigating the trawler and was on board at the time marijuana was being transported. It is only by building on these inferences, however, that the jury might then further infer that defendant participated in an unlawful agreement to possess marijuana.

*Id.* at 77-78, 291 S.E. 2d at 616-17.

*LeDuc* differs from this case in that it concerned a charge of conspiracy to possess marijuana. In order to establish that a defendant is guilty of conspiracy, the State must prove that he "entered into an unlawful confederation for the criminal purposes alleged." *LeDuc*, 306 N.C. at 76, 291 S.E. 2d at 616 (quoting *State v. Andrews*, 216 N.C. 574, 6 S.E. 2d 35 (1939)). In *LeDuc* the State could not prove the essential elements of the conspiracy without resorting to the stacking of inferences.

In the instant case it was unnecessary for the jury to stack inference upon inference to find that defendant was guilty of trafficking in marijuana in excess of 10,000 pounds. There is evidence which raises a reasonable inference that he was involved with the other traffickers in the planning of the smuggling operation, and there is evidence which raises a reasonable inference that he was present at the unloading site when the marijuana was landed. Together, these inferences are sufficient to support the jury's conclusion that defendant acted in concert with the traffickers to possess or transport in excess of 10,000 pounds of marijuana.

The Court of Appeals also relied on *State v. Baize*, 71 N.C. App. 521, 323 S.E. 2d 36, for the proposition that the State could not use the doctrine of concerted action to avoid proving constructive presence and constructive possession because that would permit the State to stack inference upon inference. We hasten to point out that in the instant case there was no need for the State to show constructive possession. When the State has established, as it has in this case, that a defendant was present while a trafficking offense occurred and that he acted in concert with others to commit the offense pursuant to a common plan or purpose, it is not necessary to invoke the doctrine of constructive possession. *See generally State v. Joyner*, 297 N.C. 349, 255 S.E. 2d 390. In *Baize*, reliance by the State on the doctrine of constructive possession was necessary because the drugs in question were in the possession and under the control of a person other than Baize, and Baize was not present when the drugs were seized. 71 N.C. App. at 528-29, 323 S.E. 2d at 41.

We therefore hold that when considered as a whole the evidence produced by the State was sufficient to withstand defendant's motion to dismiss.

[2] Defendant next assigns as error the trial court's denial of his motion to set aside the verdict. He argues that the verdict was ambiguous and lacked the unanimity required by N.C.G.S. § 15A-1237 and article 1, section 24 of the North Carolina Constitution.

In his final mandate the trial judge instructed the jury as follows:

> I charge that if you find from the evidence and beyond a reasonable doubt that on or about May 2nd, 1984, the defendant Diaz, acting either by himself or acting together with Tudela, or Harrelson, or Sosa, or Almanzar, or Alonzo, or Fonseca, or Steeg or Martinez or Alfonso or Louis Concepcion or Tellez or Jose Almanzar or Fernandez or Juan Hernandez or Rivero or Mesa or Reed or Vandesteeg or Stevens or Coiner or Jimenez or Andrews or Glow or Valdes or Frank Concepcion, knowingly possessed or knowingly transported marijuana, and that the amount which he possessed or transported was 10,000 pounds or more, it would be your duty to return a verdict of guilty as charged. However, if you do not so find or have a reasonable doubt as to one or both of these things, it would be your duty to return a verdict of not guilty.

"No person shall be convicted of any crime but by the unanimous verdict of a jury in open court." N.C. Const. art. 1 § 24. *See also* N.C.G.S. § 15A-1237(b) (1983). Submission of an issue to the jury in the disjunctive is reversible error if it renders the issue ambiguous and thereby prevents the jury from reaching a unanimous verdict. *See Jones v. All American Life Ins. Co.*, 312 N.C. 725, 736, 325 S.E. 2d 237, 243 (1985). Previously we have held that a verdict of guilty following submission in the disjunctive of two or more possible crimes to the jury in a single issue is ambiguous and therefore fatally defective. *State v. McLamb*, 313 N.C. 572, 577, 330 S.E. 2d 476, 480 (1985) (jury found that defendant "feloniously did sell or deliver" cocaine); *State v. Albarty*, 238 N.C. 130, 133, 76 S.E. 2d 381, 383 (1953) (criminal complaint improperly alleged that defendant did sell, barter, or cause to be sold or bartered lottery tickets; verdict of guilty as charged invalid because it was "not sufficiently definite and specific to identify the crime of which defendant [was] charged").

Sale, manufacture, delivery, transportation, and possession of 50 pounds or more of marijuana are separate trafficking offenses for which a defendant may be separately convicted and punished. *State v. Perry*, 316 N.C. 87, 102-04, 340 S.E. 2d 450, 460-61 (1986); *State v. Anderson*, 57 N.C. App. 602, 605-06, 292 S.E. 2d 163, 165-66, *disc. rev. denied*, 306 N.C. 559, 294 S.E. 2d 372 (1982). *See State v. Creason*, 313 N.C. 122, 129, 326 S.E. 2d 24, 28 (1985).

By instructing the jury that it could find defendant guilty of trafficking in marijuana if it found that defendant knowingly possessed or knowingly transported 10,000 pounds or more of marijuana the trial judge submitted two possible crimes to the jury. The jury could find defendant guilty if it found that he committed either or both of the crimes submitted to it. However, the jury's verdict of guilty as charged in this case is fatally defective because it is ambiguous. There is no way for this Court to determine whether the jurors unanimously found that defendant possessed 10,000 pounds or more of marijuana, transported 10,000 pounds of marijuana, both possessed and transported 10,000 pounds or more of marijuana, or whether some jurors found that defendant possessed the marijuana and some found that he transported it. Therefore, we hold that defendant has been deprived of his constitutional right to be convicted by a unanimous jury and is entitled to a new trial. N.C. Const. art. 1 § 24; N.C.G.S. § 15A-1237(b) (1983). *See State v. McLamb*, 313 N.C. 572, 330 S.E. 2d 476; *State v. Creason*, 313 N.C. 122, 326 S.E. 2d 24; *State v. Albarty*, 238 N.C. 130, 76 S.E. 2d 381.

Our decision in this case does not mean that a simple verdict of guilty based on an indictment and instruction charging crimes in the disjunctive will always be fatally ambiguous. An examination of the verdict, the charge, the initial instructions by the trial judge to the jury as required by N.C.G.S. § 15A-1213, and the evidence in a case may remove any ambiguity created by the charge. *See State v. Hampton*, 294 N.C. 242, 239 S.E. 2d 835 (1978). Reference to the indictment will rarely, if ever, be helpful because N.C.G.S. § 15A-1221(b) forbids the reading of the indictment to the jury or prospective jurors.

We have held that

[a]s a general rule, where a statute specifies several means or ways in which an offense may be committed in the alterna-

tive, it is bad pleading to allege such means or ways in the alternative. But where terms laid in the alternative are synonymous, the indictment is good; and where a statute, in defining an offense, uses the word 'or' in the sense of 'to-wit,' that is, in explanation of what precedes, making it signify the same thing, the indictment may follow the words of the statute.

*State v. Jones*, 242 N.C. 563, 565, 89 S.E. 2d 129, 131 (1955) (quoting 31 C.J., Indictments and Information, § 181 (1923) (Indictment charging that defendant "did unlawfully and wilfully build or install a septic tank . . ." not duplicitous because terms "build" and "install" are synonymous). This rule is applicable to a trial judge's instructions to the jury as well as to indictments and informations. *See United States v. Gipson*, 553 F. 2d 453, 458 (5th Cir. 1977). When construing N.C.G.S. § 90-95(h)(2), it cannot be said that possession and transportation of marijuana are synonymous, and in this case we find nothing in the verdict, the initial instructions of the trial judge to the jury, the charge, or in the evidence which resolves the ambiguity created by the disjunctive instruction.

We recognize that *State v. Foust*, 311 N.C. 351, 317 S.E. 2d 385 (1984), and *State v. Hall*, 305 N.C. 77, 286 S.E. 2d 552 (1982), reached results at variance with this opinion. Insofar as those and other opinions of this Court contain language inconsistent with the holding of this case they are overruled.

Since defendant was deprived of his constitutional right to be convicted only by a unanimous jury and is, therefore, entitled to a new trial, we need not consider his remaining assignments of error. For the reasons stated the decision of the Court of Appeals is reversed and defendant is awarded a new trial.

Reversed and remanded.

Justice FRYE dissenting in part and concurring in part.

I dissent to that part of the majority's opinion which holds that the State produced substantial evidence that defendant committed the crime charged. The majority relies upon the following facts to support the identification of defendant Diaz as one of the people involved in the activities at the swamp: the phrase "Dias

equals Galones" found in what appeared to be a code book, the name "Bienvenido Diaz" typed on the rental receipt for the Buick caught leaving the swamp, and the circumstances of defendant's arrest. From these facts, the majority concludes first that Diaz "was a participant in the planning of the crime of trafficking in more than 10,000 pounds of marijuana" and second, that he was "present and assisted in the loading, unloading, and transportation of the marijuana."

First, I am convinced that the facts as presented in this case will not support a reasonable inference that the phrase "Dias equals Galones" had any connection at all with defendant. Defendant's name is Diaz, not Dias. While this distinction might not appear critical to an English speaker, it might well be critical to a Spanish speaker. As far as is shown in the opinion, the State introduced no evidence on this point. From context, the word "Dias" could be any non-English word; there is not even a suggestion that it is a name. The code read, "One equals Rosalba, two equals Maricla, . . . Dias equals Galones."

Second, the State's evidence as described in the majority's opinion will permit only an inference that defendant rented the Buick automobile detained during the raid. The State's only evidence connecting defendant with the automobile is the name "Bienvenido Diaz" appearing on the rental agreement. No one identified defendant as the person who rented the Buick, the rental agreement was not signed, the purported identifying information was not confirmed as actually identifying defendant, and neither defendant, his personal possessions, nor his fingerprints were found in the automobile. To conclude from the inference that defendant rented the Buick that he also participated in planning the crime would amount to stacking an inference upon an inference. Defendant's guilt may not be predicated upon such evidence in this state. *State v. Ledford*, 315 N.C. 599, 340 S.E. 2d 309 (1986); *State v. Parker*, 268 N.C. 258, 150 S.E. 2d 428 (1966).

While the circumstances of defendant's arrest three days after the raid may be sufficient for the jury to infer that defendant was present at the scene, it would be necessary for the jury to stack inference upon inference for it to further find from these circumstances that defendant also participated in the criminal events of that evening.

I therefore conclude, as did the unanimous panel of the Court of Appeals, that there was insufficient evidence to go to the jury.

Because I believe that the State's evidence was insufficient to take the case to the jury, I would not reach the second issue discussed by the majority. Nevertheless, since the Court has decided to reach this issue, I concur in the well-reasoned opinion of the majority as to this issue.