WYNN, Judge.
Defendant, Edward Demorris Huckabee, contends the trial court should have granted his motions to suppress evidence and to dismiss for want of sufficient evidence. He also contends a new trial is warranted because the trial court rendered an erroneous jury instruction. After careful review we affirm Defendant's convictions.
On 22 May 2002, members of the City-County Vice and Narcotics team of New Hanover County were surveilling an apartment after receiving information from a confidential informant that illegal drugs and weapons could be located at that address. Specifically, Sergeant Bobby Blackman had received information that a group ofblack males at an apartment unit had numerous weapons and a large quantity of crack cocaine. Sergeant Blackman observed the apartment for approximately thirty minutes and did not see anyone enter or leave the apartment. Shortly thereafter, Sergeant Blackman and two detectives decided to conduct a "knock and talk," a procedure in which law enforcement personnel knock on the door and try to obtain cooperation or consent to enter from someone with control of the residence to determine if illegal activities are occurring.
Upon knocking on the door, the officers heard movement inside the apartment. After knocking a second time someone inside the apartment looked through the window blinds and Sergeant Blackman held up his badge and identification. Two to three minutes later, Edward Watkins opened the door. Sergeant Blackman asked Watkins if he could come in and talk and Watkins replied "Yes, what's going on." As they entered the apartment, Sergeant Blackman and the detectives smelled a strong odor of marijuana and could see a cloud of marijuana smoke.
Once inside, the officers noticed some men coming out of a bedroom and one person tried to exit the apartment through a rear sliding door. The officers decided to "secure" the apartment by checking the six men for weapons and placing them in a common location. As they walked through the apartment looking for people, the officers noticed a glass bowl with a substance appearing to be cocaine residue on it and they noticed several "crumbs" of cocaine on the kitchen floor and in the back bedroom. Based upon theconfidential tip, the odor of marijuana and the items seen in plain view, the detectives obtained a search warrant, which arrived at the apartment forty-five minutes later. During the search, the officers found approximately 300-400 grams of crack cocaine, two semi-automatic handguns, digital scales, small ziploc baggies, and a large glass mixing bowl with cocaine residue.
The six men inside of the apartment were arrested. The apartment tenant, Jessica Roberts, was arrested the next day as she was not present at the apartment during any of the aforementioned events. Defendant was arrested later as he was in jail on 22 May 2002. Defendant's arrest was based upon information obtained from recorded jail telephone conversations. Also, Jessica Roberts, the apartment tenant, was Defendant's girlfriend and the mother of his young son.
Defendant was convicted of trafficking in cocaine by possession of in excess of 200 but less than 400 grams, trafficking in cocaine by manufacturing, conspiracy to sell and deliver cocaine, and maintaining a dwelling to keep and deliver a controlled substance. Defendant received a consolidated aggravated sentence of 12-15 months for maintaining a dwelling to keep and deliver a controlled substance and conspiracy to sell and deliver cocaine. For the remaining charges, Defendant received a consolidated sentence of not less than 70 and not more than 84 months active incarceration. The sentences were to run consecutively. Defendant appeals.
Defendant contends the trial court should have granted his motion to suppress the evidence seized during the apartment search as the officers did not have a reasonable belief that Watkins had common authority over the premises and could consent to the officers' entry. Defendant also contends the evidence obtained from the recorded telephone conversations should have been suppressed as fruit of the poisonous tree - i.e., the unconstitutional apartment search. Even assuming the police did not have a constitutional basis to search the apartment as a result of Watkin's permission to enter, the apartment search was valid based upon other exceptions to the warrant requirement.
The Fourth Amendment to the United States Constitution protects the 'right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures.' U.S. Const. amend. IV. The Fourth Amendment is applicable to the states through the Due Process Clause of the Fourteenth Amendment. Similarly, the Constitution of the State of North Carolina provides that 'general warrants, whereby any officer or other person may be commanded to search suspected places without evidence of the act committed, or to seize any person or persons not named, whose offense is not particularly described and supported by evidence, are dangerous to liberty and shall not be granted.' N.C. Const. art. I, § 20. It is a 'basic principle of Fourth Amendment law' that searches and seizures inside a home without a warrant are presumptively unreasonable.
State v. Smith, 346 N.C. 794, 798, 488 S.E.2d 210, 213 (1997). In this case, it is undisputed that the officers did not have a search warrant upon their initial entry into the apartment. However, notwithstanding the lack of a warrant and Defendant's arguments regarding the validity of Watkin's consent, the officers' actionswithstand constitutional scrutiny.
First, the `knock and talk' conducted by the officers was constitutional. See State v. Tripp, 52 N.C. App. 244, 249, 278 S.E.2d 592, 596 (1981)(stating "law enforcement officers have the right to approach a person's residence to inquire as to whether the person is willing to answer questions"). Second, the combination of the marijuana odor, the visible cloud of marijuana smoke, the length of time it took the occupants to open the door, the attempt by one of the occupants to leave the premises through the rear sliding door, and the information obtained from the confidential informant provided probable cause for a search warrant and exigent circumstances. See State v. Prevette, 43 N.C. App. 450, 259 S.E.2d 595 (1979)(finding probable cause and exigent circumstances when officers, after receiving a "tip," approached a residence to inquire about possible criminal activity and upon stepping on the front porch the officers saw marijuana in the house by looking through the screen door in plain view and observed an individual trying to flee the premises through the back door); see also State v. Ford, 71 N.C. App. 748, 323 S.E.2d 358 (1984)(probable cause existed when officers detected marijuana odor emanating from a mobile home while surveilling the mobile home from nearby woods). Due to these circumstances, the officers actions in securing the premises and conducting the protective sweep of the apartment was constitutional. See State v. Tripp, 52 N.C. App. 244, 250-51, 278 S.E.2d 592, 597 (1981). As stated in State v. Tripp,
So long as no general warrantless search is undertaken, when there is probable cause tobelieve that evidence is located in a house and a likelihood that the occupants will remove or destroy it pending issuance of a warrant (i.e., exigency), it is permissible for an officer already legitimately on the premises to secure the area against removal of property pending issuance of a warrant.
Id. The officers conducted the protective sweep, located six individuals, and placed them in the common area of the apartment. During the protective sweep, the officers saw small pieces or crumbs of a substance that appeared to be crack cocaine and a large glass bowl containing a substance appearing to be cocaine residue in the kitchen sink in plain view. See Tripp, 52 N.C. App. at 250, 278 S.E.2d at 597 (indicating "mere observation of . . . items in plain view by officers who were at a place where they had a legal right to be did not constitute an impermissible search"). Based upon their observations, the confidential informant's tip, and illegal substances obtained during a pat-down of the six men in the apartment, the detectives applied for a search warrant. After the arrival of the search warrant, the officers searched the apartment and found a detergent box with 300-400 grams of crack cocaine inside, two semi-automatic handguns, digital scales, plastic ziploc baggies used to package illegal drugs, and other items. As the officers' search and seizure was constitutional, the trial court did not erroneously deny Defendant's motion to suppress the evidence retrieved from the apartment.
Defendant also contends the trial court should have suppressed the content of his tape recorded telephone conversations made from jail as "fruit of the poisonous tree." He contends that but forthe illegal search of the apartment, the officers would not have reviewed the taped conversations and the evidence obtained therefrom would not have been used against him to his prejudice. As we have concluded the apartment search was constitutional, we overrule this assignment of error.
Next, Defendant argues the trial court erroneously denied his motion to dismiss for want of sufficient evidence. Specifically, Defendant argues there was insufficient evidence of his possession of cocaine to support the charges of maintaining a dwelling to keep and deliver a controlled substance, conspiracy to sell and deliver cocaine, trafficking in cocaine by manufacturing, and trafficking in cocaine by possession. We disagree.
In determining the sufficiency of the evidence to withstand a motion to dismiss, the trial court must determine
whether there is substantial evidence (1) of each essential element of the offense charged, or of a lesser offense included therein, and (2) of defendant's being the perpetrator of such offense. Substantial evidence is such relevant evidence as is necessary to persuade a rational juror to accept a conclusion. The trial court must review the evidence in the light most favorable to the State, giving the State the benefit of every reasonable inference to be drawn therefrom.
State v. Squires, 357 N.C. 529, 535, 591 S.E.2d 837, 841 (2003). "Contradictions and discrepancies [in the evidence] are for the jury to resolve and do not warrant [dismissal]." State v. Pallas, 144 N.C. App. 277, 286, 548 S.E.2d 773, 780 (2001).
Possession of drugs is not an element of maintaining a dwelling to keep and sell a controlled substance or of conspiracyto sell and deliver cocaine. See State v. Rosario, 93 N.C. App. 627, 634, 379 S.E.2d 434, 438, cert. denied, 325 N.C. 275, 384 S.E.2d 527 (1989). Therefore, our analysis focuses upon the charges of trafficking in cocaine by possession and by manufacturing.
Defendant was indicted for trafficking in cocaine by possession or manufacture of more than 200 grams but less than 400 grams of cocaine. Under N.C. Gen. Stat. § 90-95(h)(3)
Any person who sells, manufactures, delivers, transports, or possesses 28 grams or more of cocaine and any salt, isomer, salts of isomers, compound, derivative, or preparation thereof, or any coca leaves and any salt, isomer, salts of isomers, compound, derivative or preparation thereof which is chemically equivalent or identical with any of these substances . . . or any mixture containing such substances shall be guilty of a felony, which felony shall be known as "trafficking in cocaine" and if the quantity of such substance or mixture involved:
b. Is 200 grams or more, but less than 400 grams, such person shall be punished as a Class F felon and shall be sentenced to a minimum term of 35 months and a maximum term of 42 months in the State's prison and shall be fined not less than fifty thousand dollars ($50,000).
Under this provision, "the burden is on the State to prove the defendant possessed and transported [200] grams or more of cocaine." State v. Shook, 155 N.C. App. 183, 186, 573 S.E.2d 249, 252 (2002). The possession element may be established by a showing that "(1) the defendant had actual possession; (2) the defendant had constructive possession; or (3) the defendant acted in concert with another to commit the crime." State v. Garcia, 111 N.C. App.636, 639-40, 433 S.E.2d 187, 189 (1993); see also State v. Diaz, 317 N.C. 545, 552, 346 S.E.2d 488, 493 (1986)(indicating that when the State has established that a defendant was present while a trafficking offense occurred and that he acted in concert with others to commit the offense pursuant to a common plan or purpose, it is not necessary to invoke the doctrine of constructive possession).
In this case, although Defendant was in jail on an unrelated matter when the police seized the approximately 300 to 400 grams of crack cocaine from his girlfriend's apartment, Edward Watkins testified Defendant helped "cook the cocaine" in the large mixing glass bowl that contained cocaine residue in the apartment where the crack was later seized. Watkins also identified the 300-400 grams of crack cocaine as the drugs they cooked the night before Defendant's arrest on a bond violation. Watkins also testified the apartment was rented by Defendant's girlfriend and that he and Defendant occasionally lived at the apartment. Finally, Watkins identified Defendant's voice on the recorded jail conversations in which Defendant was asking individuals at the apartment to sell the drugs. Based upon this evidence, the State sufficiently established Watkins and Defendant acted in concert pursuant to a common plan or purpose to manufacture at least 300-400 grams of crack cocaine from cocaine powder at the apartment from which the final product, crack cocaine, was seized. Accordingly, the trial court did not erroneously deny Defendant's motion to dismiss the trafficking charges for want of sufficient evidence. Finally, Defendant argues the trial court erred by rendering an instruction on "acting in concert," constructive possession, and conspiracy because Defendant was not present when a trafficking offense occurred. However, as indicated by the evidence in this case, particularly Watkins' testimony that Defendant helped "cook the cocaine" in the apartment where the drugs were seized by the police, the trial court did not err in its jury instructions. As Diaz provides legal authority for the instructions, we overrule this assignment of error. See Diaz, 317 N.C. at 552, 346 S.E.2d at 493 (indicating that when the State has established that a defendant was present while a trafficking offense occurred and that he acted in concert with others to commit the offense pursuant to a common plan or purpose, it is not necessary to invoke the doctrine of constructive possession).
Affirmed.
Judges CALABRIA and STEELMAN concur.
Report per Rule 30(e).