IN THE SUPREME COURT OF NORTH CAROLINA

No. 49A24

Filed 23 May 2025

STATE OF NORTH CAROLINA

v.

JAMES FREDRICK BOWMAN

Appeal pursuant to N.C.G.S. § 7A-30(2) (2023) from the decision of a divided panel of the Court of Appeals, 292 N.C. App. 290 (2024), reversing in part a judgment entered on 25 January 2022 by Judge Josephine K. Davis in Superior Court, Durham County, and remanding the case for a new trial concerning the two counts of first-degree forcible sexual offense. Heard in the Supreme Court on 24 October 2024.

*Jeff Jackson, Attorney General, by Sherri Horner Lawrence, Special Deputy Attorney General, for the State-appellant.*

*Glenn Gerding, Appellate Defender, by Aaron Thomas Johnson, Assistant Appellate Defender, for defendant-appellee.*

RIGGS, Justice.

At the most basic level, the right to a unanimous jury verdict ensures that a person accused of a crime is only convicted if the jury unanimously agrees on the accused's culpability for each charge. In cases where the accused has allegedly committed multiple acts or has been charged with multiple counts of an offense, challenges arise when the trial court's jury instructions either undermine unanimity or fail to emphasize the need for unanimity as to each act. This can occur when jury

instructions are disjunctive, meaning that they include mutually exclusive alternative elements joined by the conjunction "or." A new trial might be warranted if circumstances surrounding the trial do not remove the ambiguity of the verdict (i.e., it is unclear whether the jury came to a unanimous verdict). However, controlling precedents establish that if the trial court merely instructs the jury disjunctively as to various alternative acts *which will establish an element of the offense*, the requirement of unanimity is satisfied. Because the Court of Appeals did not apply the controlling precedents and failed to consider the circumstances surrounding the trial that removed ambiguity of the verdict below—such as the entirety of the jury instructions and the evidence incriminating Mr. Bowman—we reverse the Court of Appeals' decision and remand for further proceedings.

## I. Factual and Procedural Background

### A. Factual Background

On 3 March 2019, James Bowman messaged S.B.[1] on Facebook, and the two began chatting online for a couple of weeks before exchanging numbers. Eventually, they met in person and became involved in an intimate relationship. The relationship soured after S.B. learned that Mr. Bowman was controlling and violent.

On 8 September 2019, S.B. agreed to pick up Mr. Bowman from work early the following morning. S.B.'s phone service turned off and she was unable to get in touch with Mr. Bowman by the time Mr. Bowman was ready to leave work. Around five-

---

[1] We use the pseudonym S.B. to protect the victim's identity pursuant to Rule 42(b).

thirty in the morning, S.B. woke up to Mr. Bowman banging on the window, exclaiming, "Open up this effing door." S.B. complied.

Mr. Bowman accused S.B. of sleeping with another man while he was at work. S.B. denied that allegation, and Mr. Bowman became violent. First, he punched S.B. in her chest multiple times. S.B. felt her only option was to endure the blows. S.B. testified that she was afraid of Mr. Bowman because she knew he was armed with a firearm that she had loaned to him.

Mr. Bowman drew the gun at S.B. and demanded that she remove her clothes. S.B. complied and Mr. Bowman her told to "[t]urn around" and "bend over so he could go in anally." Mr. Bowman inserted his fingers into S.B.'s anal opening while still pointing the gun at her head. Mr. Bowman then removed his fingers and inserted his penis into S.B.'s anal opening. Next, Mr. Bowman forced S.B. to perform fellatio. At this point, he cocked the gun and "put it to the top of [S.B.'s] head." S.B. believed that Mr. Bowman would kill her if she did not do what he demanded. After forcing S.B. to perform oral sex, Mr. Bowman forced her to have vaginal sex with him. During the course of the attack, S.B. "zoned out" and did not remember all of the details of the attack.

**B. Grand Jury Indictment and Trial**

A Durham County grand jury indicted Mr. Bowman for seven criminal offenses on 21 October 2019. Relevant here, the indictment labeled 19CR002364 listed two charges (Charges II and III) of first-degree forcible sexual offense in violation of

N.C.G.S. § 14-27.26.  Charges II and III of the indictment both provide:

> The jurors for the State upon their oath present that on or about the date of offense shown and in the county named above the defendant named above unlawfully, willfully and feloniously engage[d] in a sex offense with [S.B.], by force and against the victim's will.

Mr. Bowman entered pleas of not guilty on all charges and opted for trial.  On 23 March 2021, the trial court declared a mistrial because of a hung jury.  Mr. Bowman's second trial commenced on 17 January 2022.  Along with S.B., the State offered the testimony of several police officers, investigators, nurse practitioners, Mr. Bowman's ex-girlfriend, one of S.B.'s daughters, and S.B.'s children's father.  Mr. Bowman did not present any evidence.

The trial court provided jury instructions for each of the charged offenses.  As to the sexual act prong of the statute for first-degree forcible sexual offense, the trial court stated the following:

> For you to find [Mr. Bowman] guilty of first degree forcible sexual offense, the State must prove to you four things beyond a reasonable doubt. First, that the defendant engaged in a sexual act with the alleged victim. A sexual act means fellatio, which is any touching by the lips or tongue of one person and the male sex organ of another; anal intercourse, which is any penetration, however slight, of the anus of any person by their male or sexual organ; and, C, any penetration, however slight, by an object into the genital or anal opening of a person's body. . . .
>
> If you find from the evidence beyond a reasonable doubt that on or about the alleged date, [Mr. Bowman] engaged in a sexual act . . . with [S.B.] . . . by force and/or threat of force and that this was sufficient to overcome any resistance which the alleged victim might make, that the

-4-

alleged victim did not consent and it was against the alleged victim's will and that the defendant employed and/or displayed a weapon, it would be your duty to return a verdict of guilty of first degree forcible sexual offense. If you do not so find or have a reasonable doubt as to one or more of these things, you would not return a verdict of guilty of first degree forcible sexual offense but consider whether or not [Mr. Bowman] is guilty of second degree forcible sexual offense.

After reciting the elements for each respective charge, the trial court then instructed the jury on unanimity:

It is your duty to find the facts and render a verdict reflecting the truth. All 12 of you must agree to your verdict. You cannot reach a verdict by majority vote.

When you have agreed upon a unanimous verdict as to each charge, your foreperson should so indicate on the verdict forms.

The next day, on 25 January 2022, the jury returned guilty verdicts against Mr. Bowman on all seven charges. For the two first-degree forcible sexual offense charges, the verdict sheet completed by the jury foreperson is shown below:

IN 19CRS2364, COUNT 2, WE, THE JURY, BY UNANIMOUS DECISION, FIND THE DEFENDANT TO BE:

__X__ 1.   GUILTY OF FIRST DEGREE SEXUAL OFFENSE

OR

_____ 2.   GUILTY OF SECOND DEGREE SEXUAL OFFENSE

OR

_____ 2.   NOT GUILTY

IN 19CRS2364, COUNT 3, WE, THE JURY, BY UNANIMOUS DECISION, FIND THE DEFENDANT TO BE:

__X__ 1.   GUILTY OF FIRST DEGREE SEXUAL OFFENSE

OR

_____ 2.   GUILTY OF SECOND DEGREE SEXUAL OFFENSE

OR

_____ 2.   NOT GUILTY

The trial court then sentenced Mr. Bowman to a consolidated sentence of 365 to 498 months of active imprisonment. At the conclusion of sentencing, Mr. Bowman entered notice of appeal.

## C. Court of Appeals' Decision

In a split decision, the Court of Appeals reversed Mr. Bowman's judgment in part and remanded for a new trial on the offenses of first-degree forcible sexual offense. *See State v. Bowman*, 292 N.C. App. 290, 298 (2024). The majority held that Mr. Bowman established the trial court's plain error in instructing the jury on only one count of first-degree forcible sexual offense. *Id.* Specifically, the Court of Appeals concluded that under its precedent in *State v. Bates*, 179 N.C. App. 628 (2006) (setting forth four factors to consider in determining whether the defendant was denied a unanimous verdict: (1) the evidence, (2) the indictments, (3) the jury charge, and (4) the verdict sheets), a new trial was required "because it was not 'possible to match the jury's verdict of guilty with specific incidents presented in evidence' without a special verdict sheet, the trial court's single instruction as to first-degree forcible sexual offense was erroneous and jeopardized [Mr. Bowman's] right to a unanimous verdict." *Bowman*, 292 N.C. App. at 296 (quoting *Bates*, 179 N.C. App. at 634).

The dissent argued the trial court did not commit plain error in failing to repeat its jury instruction regarding the first-degree forcible sexual offense, pointing to controlling precedents. *Id.* at 298 (Thompson, J., dissenting). The dissent acknowledged that the indictments did not specify which sexual acts Mr. Bowman

-6-

committed; however, the dissent further argued that the record evidence of fellatio, anal sex, and other forms of penetration "could support the two first-degree forcible sexual offenses." *Id.* at 298–99. Moreover, the dissent argued the majority incorrectly applied the four-factor test adopted in *Bates* because, in sum, the case at hand was distinguishable from *Bates*. *Id.* at 302; *see Bates*, 179 N.C. App. at 633. Further, *Bates* was decided on remand in light of our decision in *State v. Lawrence*, 360 N.C. 368 (2006), for the proposition that the statute for first-degree forcible sexual offense, N.C.G.S. § 14-27.26, does not list "discrete criminal activities in the disjunctive" and, thus, does not involve the "risk of a nonunanimous verdict." *Bowman*, 292 N.C. App. at 303 (cleaned up).

After the Court of Appeals ordered a new trial, the State moved for a temporary stay and petitioned this Court for a writ of supersedeas on 23 February 2024. We allowed those filings on 26 February 2024 and 14 March 2024, respectively, and the State filed its notice of appeal based on Judge Thompson's dissent on 12 March 2024.

## II. Analysis

### A. Standard of Review

This Court has jurisdiction to hear appeals "from any decision of the Court of Appeals rendered in a case . . . [i]n which there is a dissent." N.C.G.S. § 7A-30(2) (2023), *repealed by* Current Operations Appropriations Act of 2023, S.L. 2023-134,

§ 16.21(d)–(e), https://www.ncleg.gov/Sessions/2023/Bills/House/PDF/H259v7.pdf.[2]

And on appeal before this Court, our "review . . . is limited to a consideration of those issues that are (1) specifically set out in the dissenting opinion as the basis for that dissent, (2) stated in the notice of appeal, and (3) properly presented in the new briefs." N.C. R. App. P. 16(b) (amended 2025).

The instant appeal is one based upon the dissent in *Bowman*, 292 N.C. App. 290. Judge Thompson dissented on the ground that the trial court did not commit plain error, and the State's notice of appeal and principal brief argue the same. Mr. Bowman's principal brief defends the Court of Appeals majority's decision but asks, if we overturn that decision, that we remand for consideration of Mr. Bowman's unaddressed arguments in which Mr. Bowman requested—at the Court of Appeals— that the court reverse one of the two sex offense convictions, vacate the trial court's judgment, and remand his case for resentencing. Thus, our appellate review is limited to two questions: (1) whether the Court of Appeals correctly concluded that the trial court committed plain error by violating Mr. Bowman's right to a unanimous jury verdict; and (2) if not, whether we should remand the case so the Court of Appeals can decide Mr. Bowman's remaining arguments.

**B. Plain Error Review**

---

[2] Although the General Assembly repealed subsection 7A-30(2), we nonetheless proceed with mandatory review because "[t]his appeal was filed and docketed at the Court of Appeals before the effective date of that act." *Bottoms Towing & Recovery, LLC v. Circle of Seven, LLC*, 386 N.C. 359, 361 n.1 (2024).

Under Rule 10 of our appellate rules, if a person accused of a crime fails to preserve an issue for appeal during trial, then they waive the right to appeal that issue unless the accused demonstrates that the trial court committed plain error.[3] N.C. R. App. P. 10(a)(4). Plain error review applies to "unpreserved instructional or evidentiary error[s]" which occur at trial. *State v. Lawrence*, 365 N.C. 506, 518 (2012). "[P]lain error review is unavailable for issues that fall within the realm of the trial court's discretion." *State v. Gillard*, 386 N.C. 797, 821 (2024) (cleaned up). Because Mr. Bowman is contesting the trial court's jury instructions that he did not object to at trial, the proper standard of review to be applied in the instant case is plain error.

Our plain error test requires the accused to show that (1) a fundamental error occurred at trial (2) that had a probable impact on the outcome and (3) is an exceptional case that warrants plain error review. *State v. Reber*, 386 N.C. 153, 158 (2024) (citing *Lawrence*, 365 N.C. at 518–19); *cf. State v. Odom*, 307 N.C. 655, 660 (1983) ("The plain error rule is always to be applied cautiously and only in the exceptional case . . . ." (cleaned up)). This rule is designed to "incentivize the parties to make timely objections so that the trial court may resolve the issue in real time," *State v. Collington*, 375 N.C. 401, 410 (2020), but to also "alleviate the potential harshness of preservations rules," *id.* (quoting *Lawrence*, 365 N.C. at 514).

For the reasons below, we hold that the Court of Appeals erred in holding that

---

[3] An issue on appeal may also be preserved as a matter of rule or law. Mr. Bowman does not argue that this case involves such an issue.

the trial court's jury instruction amounted to plain error. Thus, we reverse the order for a new trial. Additionally, we remand to the Court of Appeals for consideration of Mr. Bowman's remaining arguments.

## C. Right to a Unanimous Jury Verdict

The North Carolina Constitution and the General Statutes of North Carolina require a unanimous jury verdict in a criminal jury trial. N.C. Const. art. I, § 24; N.C.G.S. § 15A-1237(b) (2023); *see also State v. Jordan*, 305 N.C. 274, 279 (1982); *State v. Williams*, 286 N.C. 422, 427 (1975) ("It has never been doubted that the Constitution of this State requires a unanimous verdict for a valid conviction for any crime."). This is a bedrock principle in our state.

In contrast, this Court has established that "if the trial court merely instructs the jury disjunctively as to various alternative acts *which will establish an element of the offense*, the requirement of unanimity is satisfied." *Lawrence*, 360 N.C. at 374 (quoting *State v. Lyons*, 330 N.C. 298, 303 (1991)); *see State v. Hartness*, 326 N.C. 561 (1990) (holding that when a "single wrong is established by a finding of various alternative elements" a trial judge's disjunctive instruction as to the alternatives that establish the element does not implicate the right to a unanimous verdict). In other words, a disjunctive instruction does not violate a defendant's right to a unanimous verdict if that instruction only involves alternative acts which will establish an element of an offense. The jury does not need to be unanimous in finding a particular act among two or more alternative acts that constitute an element of an offense.

A first-degree forcible sexual offense is "a sexual act with another person by force and against the will of the other person." N.C.G.S. § 14-27.26(a) (2023). A "sexual act" includes "[c]unnilingus, fellatio, analingus, or anal intercourse, but does not include vaginal intercourse." N.C.G.S. § 14-27.20(4) (2023). "Sexual act also means the penetration, however slight, by any object into the genital or anal opening of another person's body." *Id.*

In *Hartness*, we established that the risk of a nonunanimous verdict does not arise in cases where a statute does not list, as elements of the offense, discrete criminal activities in the disjunctive in the same manner as statutes that enumerate proscribed activities, each of which is a discrete criminal offense. *See Hartness*, 326 N.C. at 564–65. There, Mr. Hartness was indicted for three counts of taking indecent liberties with a minor. *Id.* at 562. The State's evidence tended to show Mr. Hartness engaged in various forms of sexual relations with children. *Id.* at 563. The trial court's instruction on indecent liberties instructed the jury to the first element as follows: "That the defendant willfully took an indecent liberty with a child for the purpose of arousing or gratifying sexual desire." *Id.* The court defined "indecent liberty" as "an immoral, improper or indecent touching or act by the defendant upon the child," or "an inducement by the defendant of an immoral or indecent touching by the child." *Id.* Mr. Hartness argued that the jury could have split in its decision regarding *which* act constituted the offense—his touching of his stepson or his stepson's touching of him—making it impossible to determine whether the jury was

unanimous in its verdict. *Id.* The Court of Appeals agreed with Mr. Hartness after incorrectly applying the analysis from *State v. Diaz*, 317 N.C. 545 (1986), *abrogated by Hartness*, 326 N.C. 561, which dealt with a drug trafficking statute. *Hartness*, 326 N.C. at 564.

This Court, however, explained that the indecent liberties statute, N.C.G.S. § 14-202.1, does not list discrete criminal activities in the same manner as the drug trafficking statute in *Diaz*, N.C.G.S. § 90-95(h)(1), which enumerates proscribed activities (sale, manufacturing, delivery, transportation, or possession) that may each be charged as separate offenses. *Hartness*, 326 N.C. at 564–65; *see* N.C.G.S. § 90-95(h)(1) (2023). The indecent liberties statute proscribes *any* "immoral, improper, or indecent liberties," each of which is one of the means to meet an element of the crime charged. *See Hartness*, 326 N.C. at 565; N.C.G.S. § 14-202.1(a)(1) (2023). Thus, whether the jury found that Mr. Hartness touched his stepson or his stepson touched him, "the jury as a whole would unanimously find that there occurred sexual conduct" that is prohibited by the indecent liberties statute, and such a finding would establish the element of the crime charged. *Hartness*, 326 N.C. at 565.

This Court in *Diaz* held that disjunctive instructions resulted in an ambiguous and uncertain verdict because the drug trafficking statute at issue in that case criminalized the "[s]ale, manufacture, delivery, transportation, and possession of 50 pounds or more of marijuana" which are separate trafficking offenses for which a defendant may be separately convicted and punished. *Diaz,* 317 N.C. at 554. The

trial court submitted two possible crimes to the jury and the jury could find the defendant guilty of either or both crimes. *Id.* at 554. We held it was not possible to determine whether the jurors unanimously found that the defendant was guilty of possession, transport, or both, or whether there were any splits in what the jury determined the defendant was guilty of. *Id.* (stating that there is no way for the Court to know whether "some jurors found that defendant possessed [the drugs] . . . and some found that he transported [them]"). However, we also recognized that it is not the case that "a simple verdict of guilty based on an indictment and instruction charging crimes in the disjunctive will always be fatally ambiguous." *Id.* Further, the verdict, the charge, the jury instructions, and the evidence in a case may remove any ambiguity created by the charge. *Id.* (citing *State v. Hampton*, 294 N.C. 242 (1978)).

In *Lyons*, we clarified  that "critical difference between the lines of cases represented by *Diaz* and *Hartness*" is that the former line "establishes that a disjunctive instruction, which allows the jury to find a defendant guilty if he commits either of two underlying acts, *either of which is in itself a separate offense*, is fatally ambiguous because it is impossible to determine whether the jury unanimously found that the defendant committed one particular offense." *Lyons*, 330 N.C. at 302. "The latter line establishes that if the trial court merely instructs the jury disjunctively as to various alternative acts *which will establish an element of the offense*, the requirement of unanimity is satisfied." *Id.* at 303.

-13-

In *Lyons,* the trial instructions at issue were given in a disjunctive form on the charge of maliciously assaulting in a secret manner, which involves the jury agreeing that the defendant had assaulted a particular individual. 330 N.C. at 314. The trial court's instructions allowed the jury to decide one of two possible crimes for which the defendant could be separately convicted and punished: malicious secret assault against one victim and the same against another possible victim. *Id.* We held that the jury's verdict could not be deemed unanimous because the jury could have returned a verdict of guilty without all jurors agreeing that the defendant assaulted one particular individual. *Id.* *Lyons* was different from the *Hartness* line of cases because the "gravamen of the offense of maliciously assaulting in a secret manner" is the assault of a *particular* individual in that manner. *Id.* In contrast, the gravamen of the offenses in the *Hartness* line of cases—the taking of indecent liberties with a child—is not the particular conduct. *Id.* It is the intent or purpose of the defendant, and the statute provides the alternative ways to establish that the wrong occurred. *Id.*

We dealt with a challenge to jury instructions on the offense of first-degree sexual offense in *State v. Foust*, 311 N.C. 351, *opinion reinstated sub nom. State v. Peoples*, 311 N.C. 515 (1984). There, the indictment against Mr. Foust charged him with one count of first-degree sexual offense. *Foust*, 311 N.C. at 359. The State's evidence tended to show the commission of two distinct first-degree sexual offenses: anal intercourse and fellatio. *Id.* The trial court instructed the jury that "[a] sexual

act . . . mean[t] oral sex or anal intercourse" and that it "must return a verdict of guilty if [it] found that [Mr. Foust] engaged in 'oral sex or anal sex' with the victim and . . . all the other elements of first-degree sexual offense." *Id.* Mr. Foust was convicted of the first-degree sexual offense charge. *Id.* Based on this instruction, Mr. Foust appealed, arguing "that possibly six of the jurors could have found him guilty of anal intercourse, while the remaining six jurors could have found him guilty of the act of oral sex." *Id.* We acknowledged that the trial court's instructions "would allow the jury to return a guilty verdict . . . without requiring that all twelve members agree as to the guilt on at least one of the offenses." *Id.* Under those circumstances, there would be no unanimity among the jurors as to the specific crimes committed.

But we ultimately held in *Foust* that there was no error. *Id.* at 360. We considered that the trial court had instructed the jury to "return a verdict of not guilty" if it "[did] not so find or if [it had] a reasonable doubt as to one or more of [the specific acts]." *Id.* at 359. Further, the trial court instructed that the jury's "verdict[ ] must be unanimous" rather than reflecting a mere "majority." *Id.* "[R]ead as a whole," we were convinced that the trial court's jury instruction "obviously required a verdict of not guilty if all twelve jurors were not satisfied beyond a reasonable doubt that the defendant participated in either fellatio or anal intercourse, or both." *Id.* at 360. This conclusion was bolstered by the absence of "any confusion, misunderstanding[,] or disagreement among the jury members regarding the unanimity of the verdict" and the presence of "evidence amply sustain[ing] a

conviction for either or both offenses." *Id.* Considering these factors, we upheld Mr. Foust's conviction, but we made it clear that it was the "better practice" in first- and second-degree sexual offense cases for trial courts to "submit separate issues of each unlawful sexual act if more than one act exists." *Id.*

Here, like in *Foust*, the trial court below issued jury instructions that "obviously required a verdict of not guilty if all twelve jurors were not satisfied beyond a reasonable doubt that [Mr. Bowman] participated in either" fellatio, anal intercourse, or any penetration into the genital or anal openings. *See id.* Relevant to the first element of first-degree sexual offense, those instructions provided:

> For you to find the defendant guilty of first degree forcible sexual offense, the State must prove to you four things beyond a reasonable doubt. First, that the defendant engaged in a sexual act with the alleged victim. A sexual act means *fellatio*, which is any touching by the lips or tongue of one person and the male sex organ of another; *anal intercourse*, which is any penetration, however slight, of the anus of any person by their male or sexual organ; and, C, *any penetration*, however slight, by an object into the genital or anal opening of a person's body.

(Emphases added.). The trial court then explained that the jury could only return a guilty verdict if it found that Mr. Bowman "engaged in a sexual act . . . with the alleged victim." The trial court further instructed that the jury could "not return a verdict of guilty of first degree forcible sexual offense" if it did "not so find or have a reasonable doubt as to one or more of these things." Then, after instructing the jury on the remaining charges, the trial court informed the jury that "[a]ll 12 of [the jurors] must agree to [the] verdict" and that there could be no "verdict by majority vote."

Thus, the trial court's entire jury instructions as a whole provided adequate constitutional certainty as to the unanimity of the verdict.

This is not to say that Mr. Bowman's trial was flawless. The State's indictment against Mr. Bowman contained two identical counts of first-degree forcible sexual offense that did not specify a sexual act but instead stated: "[T]he defendant named above unlawfully, willfully and feloniously engage[d] in a sex offense . . . by force and against the victim's will." And the verdict sheets provided no clarity as to which specific sexual act on which the jury unanimously agreed. They simply referred to the charges listed in the indictment by "Count 2" and "Count 3." These verdict sheets were not consistent with the "better practice" we offered in *Foust*: "[T]rial judges in cases involving first or second-degree sexual offenses[ ] [should] submit *separate* issues of *each unlawful sexual act* if more than one act exists." *Foust*, 311 N.C. at 360 (emphases added).

We find the case at bar to track the *Hartness* line of cases and most relevantly, the logic in *Foust* carries particular weight. Here, evidence submitted to the jury does allow us to conclude that there was possible unanimity in the jury's decision. S.B. testified in detail about the incident. She talked about how Mr. Bowman pointed a firearm "[t]o the back of [her] head" with one hand while inserting his fingers into her anus. According to S.B., Mr. Bowman next "forc[ed]" her to engage in anal intercourse, producing a painful feeling that continued for what "seemed like forever." And following that, S.B. claimed Mr. Bowman placed his firearm "at the top of [her]

head," "cocked it," and forced her to perform fellatio on him. This testimony was further substantiated by her police report, the sexual assault examination report, and her underwear stained with blood from her anus. Also concerning is Mr. Bowman's history—he previously expressed a desire to commit forcible anal intercourse with a different victim, albeit some years ago. The jury heard evidence of three separate acts that would fall within the definition of "sexual act." Further, the trial court's instructions provided the elements of the first-degree forcible sexual offense charge, defining the various acts that would constitute a forcible sexual offense (i.e., meet the statute's definition of the crime), and the instructions emphasized the need for unanimity.

Because the trial court's jury instructions and the evidence on record cleared the verdict of any ambiguity, we cannot say that the trial court violated Mr. Bowman's right to a unanimous jury verdict, let alone that it committed plain error.

### III.  Conclusion

Mr. Bowman has not demonstrated that the trial court committed plain error. Thus, we reverse the Court of Appeals' decision. Because the Court of Appeals did not reach Mr. Bowman's additional arguments, though, we remand to the Court of Appeals for further proceedings to address those arguments in a manner not inconsistent with this opinion.

REVERSED AND REMANDED.